THE CHASE MANHATTAN BANK, N.A., peticionario, *v.* MIGUEL EMMANUELLI BAUZÁ y OTROS, recurridos.

Número: O-81-348 Resuelto: 10 de noviembre de 1981

Leopoldo J. Cabassa Saurí y Julio M. Rodríguez, de Fiddler, González & Rodríguez, abogados del peticionario; Angel M. Villamil Rodríguez, Wilfredo López Irizarry, Elba Luisa Rico, Lourdes López Sobá y Héctor Febo Serrano, abogados de los recurridos.

PER CURIAM: La Urbanizadora Romi, Inc. (en adelante "la urbanizadora" o "Romi") construyó el proyecto Sagrado Corazón en Ponce. La Trust Mortgage Corporation ("Trust Mortgage") financió la obra. Bajo un contrato complementario, Trust Mortgage le proveyó a la urbanizadora, en calidad de préstamo, para completar el proyecto y efectuar ciertas reparaciones, la suma adicional de $1,030,000 con la garantía prendataria de un pagaré hipotecario por tal suma. La hipoteca otorgada al efecto grava treinta y dos solares de la referida urbanización.

Para facilitar esta transacción, Trust Mortgage le tomó prestado al Chase Manhattan Bank, N.A., ("el Chase" o "la financiera interina") la misma cantidad, bajo un contrato denominado "Loan and Pledge Agreement" ("el contrato de financiamiento parcial interino"). En virtud de este

contrato Trust Mortgage transfirió al Chase, en garantía del préstamo y en calidad de prenda, el mencionado pagaré hipotecario por $1,030,000.

La urbanizadora y Trust Mortgage contrataron con Manuel Fidalgo y Asociados ("Fidalgo") para que efectuase las reparaciones necesarias en las viviendas y las vendiese.

Diversos compradores de las casas instaron querellas, respectivamente, el 29 de julio de 1976, el 12, 14, 17 y 19 de enero de 1977 y el 4 de abril de 1977 contra Romi y Fidalgo. El 13 de septiembre de 1977 se añadió al Chase como co-querellado. El 9 de noviembre de 1979, el Departamento de Asuntos del Consumidor ("DACO") les ordenó a Romi, Trust Mortgage y al Chase, así como a otros bancos que habían participado en el financiamiento del proyecto, que procediesen a reparar los vicios ocultos surgidos. DACO desestimó las querellas contra Fidalgo. Confirmada la orden de DACO por el Tribunal Superior, acordamos revisar a solicitud del Chase, quien pide la revocación de la orden en lo que a él respecta.

■ Tiene plena razón el peticionario. En las propias determinaciones de hecho en que se fundó la orden administrativa se reconoce que el Chase sólo intervino en el financiamiento interino de la obra. No hay prueba en autos de que haya promovido, participado en la construcción o en la venta de las casas. No se nos ha citado, ni hemos podido hallar, sentencia o comentario alguno en que se extienda la responsabilidad decenal, la cuantiminosa o la redhibitoria al caso de una entidad financiera que se haya ceñido a su función usual.

DACO sostiene, no obstante, que el Chase es un "urbanizador" bajo las disposiciones del Art. 2 de la Ley Núm. 130 de 13 de junio de 1976 (17 L.P.R.A. sec. 502). El apartado (d) de este artículo dispone, en parte, que:

"Urbanizador o constructor" significará toda persona que se dedique al negocio de la construcción en calidad de

empresario o principal responsable de la promoción, diseño, venta, construcción de obras de urbanización para vivienda, o de la construcción en grande escala de viviendas, bien del tipo individual o multipisos.

■ Esta disposición es inaplicable al Chase bajo la actual situación de hechos. No hay constancia en el expediente de que este banco se dedique al negocio de la construcción o, como hemos dicho antes, que haya rebasado en este caso las funciones normales de una financiera interina. En *United Fed. Savings & Loan Assoc.* v. *D.A.C.O.*, 111 D.P.R. 424 (1981), nos enfrentamos a una contención de DACO parecida a la planteada en el caso presente, con el agravante de que la entidad financiera vendió las propiedades concernidas. Tales propiedades fueron adquiridas por United Federal al verse obligada a ejecutar una hipoteca. Resolvimos que United Federal no era una urbanizadora o constructora bajo los términos de la Ley Núm. 130 citada. *United Fed. Savings* no permite la utilización del Art. 2(d) de la Ley Núm. 130 para imputarle responsabilidad a la financiera en este caso.

DACO alega que el Chase actuó en conjunto con Trust Mortgage y los otros dos bancos querellados para vender los inmuebles concernidos mediante "el artificio corporativo de la Urbanizadora Romi, Inc. y José M. Fidalgo— José M. Fidalgo & Associates". Argumenta que Chase montó un "tinglado financiero" para evadir su responsabilidad bajo la Ley Núm. 130. No existe prueba en los autos que sostenga estas aseveraciones y determinaciones.

La "prueba" en que se apoya DACO deriva de una interpretación equivocada de los documentos que constan en autos. DACO apunta, por ejemplo, al hecho, que estima muy significativo, de que al Chase se le "asignaron" ciertas casas. De los documentos se desprende que tal asignación respondió a la simple necesidad de constituir la garantía hipotecaria requerida. No hay nada en autos que indique lo contrario. Se le imputa al Chase adelantar

dinero para las reparaciones vía Trust Mortgage. Se acusa también el banco de prohibirle a Trust Mortgage declarar dividendos, adquirir, comprar o redimir acciones de capital, vender sus activos, disolverse y efectuar ciertos otros actos. No hay prueba alguna de que estos actos se desvíen de las transacciones típicas de este género de financiamiento. Se alega que la financiera interina se iba a "lucrar totalmente", "a percibir todos los beneficios" de la venta de las casas que le fueron "asignadas". No surge de autos que la entidad financiera fuese a recibir más fondos que los correspondientes al préstamo que efectuó. De todo lo anterior, así como de otras "pruebas" igualmente endebles, se concluye que el Chase controlaba a Romi y a Trust Mortgage. Estas determinaciones y alegaciones de DACO no están sostenidas por la prueba.

La Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973 (3 L.P.R.A. sec. 341 y ss.) dispone en su Art. 341p(e) que:

> El Tribunal revisará las resoluciones u órdenes del Secretario con base al récord administrativo sometídole y sólo en cuanto a las conclusiones de derecho; las determinaciones de hecho del Secretario serán concluyentes para el Tribunal si estuvieren sostenidas por evidencia sustancial.

Las disposiciones de la Ley Núm. 130 sobre el alcance de la revisión judicial son comparables. 17 L.P.R.A. sec. 513.

Al examinar determinaciones administrativas a la luz del criterio citado este Tribunal no ha vacilado en descartarlas cuando carecen de base sustancial en el récord. *Sucn. A. Bernat* v. *Peñagaricano, Admor.*, 84 D.P.R. 526, 531–533 (1962). En lo que respecta la evaluación de documentos, hemos señalado repetidamente que este Tribunal ocupa igual posición que la de los foros primarios. *Planned Credit of P.R., Inc.* v. *Page*, 103 D.P.R. 245, 261–262 (1975). Cuando se trata, por último de organismos administrativos, como DACO, a los que se ha facultado para adjudicar querellas, la revisión judicial debe ser

especialmente rigurosa para servir de contrapeso a la amplitud de la discreción administrativa. *Hernández Denton* v. *Quiñones Desdier,* 102 D.P.R. 218, 223–224 (1974). En el caso presente no existe base sustancial en el récord para apoyar las determinaciones administrativas, adoptadas por el tribunal de instancia.

 Bajo la situación de hechos que presenta el caso de autos no puede considerarse a la entidad financiera interina una "urbanizadora" bajo la Ley Núm. 130 o una constructora o vendedora para fines del Código Civil. Ello no significa que dentro de otras circunstancias no pueda imponérsele a un banco o a una financiera que rebase sus funciones usuales la responsabilidad decenal, la cuantiminosa, la redhibitoria, la cuasi delictual u otras derivables de nuestro ordenamiento jurídico.

*Se revocará la sentencia recurrida en lo que afecta a la financiadora interina aquí peticionaria.*