FELIPE DÍAZ DELGADO, recurrente, *v.* PARTIDO POPULAR DEMOCRÁTICO, ESTADO LIBRE ASOCIADO DE PUERTO RICO, COMISIÓN ESTATAL DE ELECCIONES, demandados y recurridos.

*Número:* CE-88-219      *Resuelto:* 29 de abril de 1988

*Raúl Santiago Meléndez,* abogado del apelante; *Antonio J. Fas Alzamora,* abogado del apelado.

## RESOLUCIÓN

A la solicitud de revisión, no ha lugar, por no haberse recurrido a la Comisión Estatal de Elecciones dentro del término legal, según el procedimiento administrativo dispuesto en el Art. 4.006-A de la Ley Electoral, 16 L.P.R.A. sec. 3156a(i). Esta disposición establece que, agotado el trámite interno de revisión de los partidos políticos, cualquier decisión adversa se revisará mediante apelación a "los organismos oficiales dentro de los cinco (5) días laborables siguientes a la determinación del partido".

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Ortiz emitió voto concurrente, al cual se une el Juez Asociado Señor Alonso Alonso. El Juez Asociado Señor Negrón García emitió voto disidente y el Juez Asociado Señor Rebollo López emitió opinión disidente.

(*Fdo.*) Bruno Cortés Trigo
*Secretario General*

—O—

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Nos vemos impedidos de suscribir la posición que asume una mayoría de los integrantes de este Tribunal en el presente caso. La misma priva injustamente a un ciudadano de su derecho a competir por un puesto público. Al declarar sin lugar el recurso radicado, el Tribunal le imparte su aprobación a una de las más crasas violaciones al debido procedimiento de ley de que hemos tenido conocimiento en los últimos años. La mejor evidencia de que ello es así la constituyen los erróneos fundamentos que tanto el tribunal de ins-

tancia como este Tribunal brindan en justificación de su posición. Verdaderamente nos resulta difícil entender y comprender la decisión que hoy se emite en el presente caso.

## I

Los hechos no pueden ser más sencillos. Celebrada por el Partido Popular Democrático el día 8 de noviembre de 1987, al amparo de las disposiciones de la Ley Electoral vigente, una "elección interna tipo primaria" en relación con la candidatura al cargo de Alcalde del Municipio de Salinas resultó victorioso el alcalde incumbente, el Lic. Guillermo Valero Zayas, sobre el recurrente Dr. Felipe Díaz Delgado por una mayoría de ciento sesenta y nueve (169) votos. Este último prontamente —dos (2) días después— le notificó por escrito al Secretario General del referido partido su "intención" de impugnar la elección llevada a cabo.

Mediante escrito de fecha 16 de noviembre de 1987, el doctor Díaz Delgado formalmente impugnó ante el Partido Popular la primaria interna celebrada. Alegó, entre otras, las siguientes irregularidades en apoyo de la impugnación:

A. Apertura intencionalmente tardía de los Colegios Electorales, teniendo tal acción un efecto disuasivo en la participación de electores que optaron por retirarse.

B. En diversos Colegios correspondientes a unidades electorales, favorecedores del incumbente depositaron su voto en más de una ocasión.

C. En diversos colegios electorales no se utilizaron urnas electorales.

D. En los colegios en que no se presentaron delegados presidenciales correspondientes a otros precintos, los mismos fueron presididos mayormente por delegados del incumbente, quienes no registraron el voto de electores en las listas electorales.

E. Varios colegios electorales nunca cerraron.

F. Se produjeron sobre setenta y cinco (75) recusaciones, quedando cerca de cincuenta (50) sin adjudicar, principal-

mente contra electores favorecedores de la candidatura del aquí peticionario.

G. En múltiples Colegios, electores no firmaron la hoja de cotejo.

H. En otros Colegios, varios electores favorecedores de la candidatura del aquí Peticionario no pudieron ejercer su derecho al voto por falta de papeletas de votación. *Exhibit* III, pág. 20.

Procede que se enfatice que el recurrente Díaz Delgado radicó, conjuntamente con su escrito de impugnación, *declaraciones juradas de electores en apoyo de todas y cada una de las antes alegadas irregularidades.*

En cumplimiento de la Regla 26 del Reglamento de Primarias Internas del Partido Popular Democrático —promulgado de conformidad con el mandato a esos efectos de la Ley Electoral vigente— el recurrente Díaz Delgado intentó infructuosamente notificar personalmente al Alcalde Valero Zayas dentro del término de cinco (5) días de haber radicado la antes mencionada solicitud de impugnación. Así no pudo hacerlo por razón de que el licenciado Valero Zayas convenientemente se había ausentado temporeramente de vacaciones del Municipio de Salinas. Por dicha razón, se notificó de la impugnación realizada a la secretaria personal del licenciado Valero Zayas en la Alcaldía de Salinas y al Auditor Municipal de Salinas, Sr. Ángel Santiago, quien era el funcionario que actuaba en dicho municipio en sustitución del Alcalde —notificación sancionada por la Regla 29(8) del citado Reglamento— quienes le informaron al licenciado Valero Zayas de la impugnación radicada.

*El licenciado Valero Zayas —quien venía obligado por las disposiciones de la citada Regla 26 a contestar o controvertir la impugnación del recurrente Díaz Delgado en el término de diez (10) días so pena de entenderse como aceptada la misma— no contestó dicha impugnación.*

Ello no obstante, el Partido Popular Democrático señaló una vista alegadamente para dilucidar la impugnación reali-

zada y designó a una oficial examinadora para presidir la misma. Surge de la transcripción de evidencia de dicha vista[1] —en la cual el licenciado Valero Zayas aceptó haber sido informado por sus subalternos de la radicación de la impugnación— que en la misma, ante el planteamiento del recurrente Díaz Delgado de que su impugnación se debía tener por aceptada, por razón de que el licenciado Valero Zayas no había contestado la misma dentro del término provisto por el Reglamento del Partido Popular Democrático, *no se dilucidaron en sus méritos las alegaciones de irregularidad que había hecho el recurrente en su impugnación.* Esto es, la examinadora designada dio por celebrada la vista sin que se pasara o recibiera prueba alguna sobre dichas alegaciones de irregularidad.

Inexplicablemente, el Secretario General del Partido Popular Democrático —sin contar con un récord evidenciario y sin determinaciones de hecho relativas a las alegaciones de irregularidad del recurrente Díaz Delgado— emitió una resolución, la cual fue notificada con fecha de 14 de marzo de 1988, mediante la cual declaró sin lugar la impugnación del recurrente Díaz Delgado "por aducir fundamentos insuficientes para declarar la nulidad de la primaria interna del Municipio de Salinas", *Exhibit* VII, pág. 94, y por razón de que el referido recurrente no aportó "prueba clara, robusta y convincente", íd., en apoyo de su posición. En dicha resolución se le advirtió al doctor Díaz Delgado de su derecho a "apelar" de la misma ante la Junta de Gobierno del Partido Popular Democrático dentro del término de cinco (5) días.

El recurrente Díaz Delgado así lo hizo dentro del referido término. Mediante una escueta resolución de fecha 5 de abril de 1988, la Junta de Gobierno del Partido Popular Democrático declaró, "por unanimidad", sin lugar la apelación inter-

---

[1] La cual obra en autos.

puesta por el recurrente Díaz Delgado. *No se adujo funda-mento alguno en apoyo de dicha decisión.* Tampoco se le advirtió al doctor Díaz Delgado de su derecho de revisar di-cha decisión.

El recurrente Díaz Delgado, con fecha de 14 de abril de 1988, radicó ante el Tribunal Superior de Puerto Rico, Sala de·San Juan, un escrito que denominó "Petición Urgente de Entredicho Provisional, Interdicto Preliminar y Permanente y Solicitud de Descertificación de Candidato y Orden Provi-sional" en el cual, en síntesis y en lo pertinente, solicitó de dicho tribunal dejara sin efecto la certificación del licenciado Valero Zayas como candidato oficial a Alcalde en el Munici-pio de Salinas por el Partido Popular Democrático, y que or-denara la celebración de unas nuevas primarias internas o, en su defecto, le ordenara a la Comisión Estatal de Elec-ciones le permitiera radicar su petición para las primarias oficiales a ser celebradas en el mes de junio de 1988.

El tribunal de instancia declaró sin lugar la petición radi-cada. Entendió dicho foro, en síntesis y en lo pertinente, que el recurrente Díaz Delgado había acudido tardíamente ante dicho tribunal (incuria) y que estaba "impedido" de solicitar participar en las primarias oficiales a ser celebradas en el mes de junio de 1988 por razón de haberse acogido al proce-dimiento interno de primarias del Partido Popular Democrá-tico.

Inconforme el doctor Díaz Delgado con la sentencia emi-tida por el tribunal de instancia acudió, vía *certiorari*, ante este Foro. En el día de hoy, apoyándose en una ambigua dis-posición legal, una mayoría de este Tribunal declara sin lu-gar el recurso radicado por no haber el recurrente acudido ante la Comisión Estatal de Elecciones en revisión de la re-solución emitida por la Junta de Gobierno del Partido Popu-lar.

## II

El presente caso nunca ha debido haber llegado al foro judicial. Si el Partido Popular Democrático hubiera aplicado su propio Reglamento, *como viene obligado a hacerlo*, el asunto hubiera sido resuelto en su propio seno mediante la anulación de la primaria interna impugnada y la celebración de una nueva primaria libre de irregularidades.

La Regla 26 del Reglamento de Primarias Internas del referido partido dispone, en lo pertinente, que:

> Dentro de los diez (10) días siguientes a la fecha en que se recibiere la notificación del escrito, *la persona cuya elección fuere impugnada tendrá que radicar ante el Secretario General una contestación bajo juramento al escrito del impugnador*, entregándole a éste o a su representante en la Junta de Elecciones Internas, copia de la misma, *disponiéndose que de no contestar en dicho término se entenderá que acepta la impugnación como cierta.* (Énfasis suplido.) *Exhibit* IV, pág. 54.

Es un *hecho incontrovertido* que el alcalde incumbente, licenciado Valero Zayas, *no radicó* "ante el Secretario General una contestación bajo juramento al escrito del impugnador" Díaz Delgado. *Exhibit* III, págs. 19–42. No ofreció razón alguna para así no haberlo hecho. Por lo tanto, resultaba mandatorio que se entendiera, y se resolviera, por dicho partido que el licenciado Valero Zayas *había aceptado como cierta* la impugnación realizada por el recurrente Díaz Delgado. En su consecuencia, el Partido Popular Democrático *venía obligado* a anular la elección interna celebrada y a ordenar la celebración de una nueva primaria.

Es del conocimiento de todos que hemos resuelto que un organismo administrativo —y en este caso, el Partido Popular Democrático es un "organismo administrativo"— viene en la *obligación de observar estrictamente sus propios reglamentos. Cf. García v. Adm. del Derecho al Trabajo*, 108 D.P.R. 53 (1978); *Texidor v. Superintendente de la Policía*, 109 D.P.R. 156 (1979). La Ley Electoral vigente ciertamente

contempla, en adición a la celebración de primarias oficiales, que un partido político pueda celebrar sus propias primarias internas. *Dicha ley le exige a los partidos políticos, sin embargo, que por reglamento al efecto establezcan unas salvaguardas que garanticen los derechos de las personas que se sometan a dichas primarias internas*, las cuales salvaguardas vienen en la obligación de observar.

Mediante la decisión que hoy emite una mayoría de este Tribunal se le permite al Partido Popular Democrático violar impunemente el propio reglamento que dicho partido estableció para garantizar los derechos de los participantes en esas primarias internas.

III

En el presente caso no sólo nos enfrentamos a una violación de su propio reglamento por parte de un "organismo administrativo", sino a una situación en que dicho "organismo" sumariamente desestima una fundamentada impugnación de sus procedimientos en una forma caprichosa y sin base alguna para ello.

Recordemos que el recurrente Díaz Delgado acompañó, con su escrito de impugnación, *declaraciones juradas* de electores *bona fide* del Partido Popular Democrático *en apoyo de todas y cada una de las irregularidades que él alegó fueron cometidas en dicha elección interna*; señalamientos que revisten la más seria gravedad, cualesquiera de cuyos señalamientos sería suficiente para anular la mencionada elección. En la vista señalada por dicho partido para dilucidar la impugnación, sin embargo, no se desfiló prueba ante la oficial examinadora sobre las referidas irregularidades.

Cabe preguntarse: si ello fue así, ¿cómo es posible que el Secretario General del Partido Popular Democrático determinara que el recurrente no aportó "prueba clara, robusta y convincente" en apoyo de su impugnación si nunca hubo la

oportunidad de así hacerlo? No debe perderse de vista que la única "prueba" que tuvo el referido Secretario ante su consideración para llegar a dicha sorprendente conclusión precisamente fueron las declaraciones juradas a que hemos hecho referencia, *las cuales sostienen ampliamente los señalamientos hechos por el aquí recurrente.*

Lo anteriormente señalado a nuestro juicio es suficiente, por sí sólo, para revocar la "determinación administrativa" realizada por el Partido Popular Democrático por cuanto ello constituye prueba irrefutable de una actuación arbitraria y carente de fundamento y base evidenciaria por parte de un "organismo administrativo", *razón por la cual dicha determinación no merece deferencia de clase alguna por los tribunales. Cf. Chase Manhattan Bank v. Emmanuelli Bauzá,* 111 D.P.R. 708 (1981); *Rodrigo v. Tribunal Superior,* 101 D.P.R. 151 (1973); *López v. Junta de Planificación,* 80 D.P.R. 646 (1958).

## IV

Ante esta situación de manifiesta injusticia y violación crasa del debido proceso de ley, *¿qué hace el poder judicial ante los válidos argumentos esgrimidos por el recurrente en apoyo de su solicitud de que se le permita concurrir a, y competir en, otra primaria?* Aun cuando por distintos fundamentos, tanto el foro de instancia como este Tribunal declaran sin lugar su reclamo de justicia.

Los fundamentos aducidos por el tribunal de instancia en la sentencia desestimatoria que emitiera son palpablemente erróneos. No creemos que, a la luz de los hechos del presente caso, se le pueda imputar incuria al aquí recurrente. Por otro lado, de la única forma que se puede sostener la validez constitucional de la disposición contenida en el Art. 4.006-A, inciso (i), de la vigente Ley Electoral, 16 L.P.R.A. sec. 3156a(i), a los efectos de que todo "aspirante en el proceso de selección interna aquí establecido que no resultare favorecido en

el mismo, estará impedido de concurrir y competir como candidato en cualquier proceso de primarias", *es que dicho proceso interno haya sido uno válido*. Eso precisamente es lo que está aquí en controversia. Esto es, lo que el aquí recurrente impugna es *la validez* de la primaria interna celebrada en el presente caso. *De eso es lo que se trata.*

## V

Por su parte, una mayoría de este Tribunal sostiene que no procede el reclamo de justicia que hace el recurrente por éste no haber "recurrido a la Comisión Estatal de Elecciones dentro del término legal, según el procedimiento administrativo dispuesto en el Art. 4.006-A de la Ley Electoral de Puerto Rico". Resolución, pág. 166. En otras palabras, el Tribunal entiende que dicha disposición legal establece un término de carácter jurisdiccional.

¿Es jurídicamente correcto el fundamento aducido por una mayoría de este Tribunal al denegar el auto de *certiorari* solicitado? Esto es, en un caso como el presente, ¿viene obligado —*como requisito previo para acudir al foro judicial*— a recurrir ante la Comisión Estatal de Elecciones un miembro de un partido político que resulta perjudicado por la decisión emitida por dicho partido en relación con sus aspiraciones a un cargo electivo público? Aceptando a los fines de la argumentación que la interpretación que del inciso (i) del citado Art. 4.006-A de la Ley Electoral hace el Tribunal es correcta, lo cual es debatible, entendemos que no se justifica la interpretación excesivamente restrictiva que de la misma se hace.

El citado Art. 4.006-A de la vigente Ley Electoral, 16 L.P.R.A. sec. 3156a, dispone:

Los partidos políticos podrán adoptar métodos internos para la nominación de sus candidatos *siempre que* así lo apruebe su organismo directivo central y *se cumplan con las siguientes garantías mínimas*:

(a) Que el procedimiento de nominación adoptado asegure la expresión representativa de los electores afiliados a ese partido en las jurisdicciones correspondientes. A esos efectos, se autoriza la selección de los candidatos nominados mediante el voto directo y secreto de los afiliados, la selección de éstos por un organismo reglamentario de ese partido o por un sistema de delegados basado en la población, o en número de electores, o el número de votos obtenidos por ese partido en la elección general anterior.

(b) Que los procedimientos para el mecanismo de selección hayan sido formalmente adoptados y estén disponibles para los militantes de ese partido y se les notifique a los participantes el proceso de selección. A esos efectos los procedimientos de selección adoptados serán radicados en la Comisión Estatal de Elecciones con no menos de 15 días antes de la celebración del proceso de selección. Las reglas que han de regir el proceso incluirán los lugares, fecha y horas donde se han de celebrar los mismos.

(c) Que todo candidato tenga acceso previo a la lista de participantes en el proceso de selección y se le garantice un foro adecuado para impugnar la misma.

(d) Que todos los candidatos tengan derecho a representación efectiva en las etapas críticas del proceso de selección, tales como en la de elección de delegados, en la del registro de los participantes y en el proceso de votación y de escrutinio.

(e) Que las posiciones y lugar en que ha de figurar el nombre de los nominados en las papeletas sean seleccionadas mediante sorteo en presencia de los candidatos o sus representantes.

(f) Que garanticen el derecho a recusar a los participantes por las razones que se disponen en este Subtítulo y las que se dispongan en el reglamento de su partido.

(g) Que exista igual acceso y protección a los participantes en todas las etapas del proceso de selección.

(h) Que la votación sea libre y secreta.

(i) *Que existan mecanismos internos eficaces para impugnar la violación de estas normas y agotado ese foro el derecho de recurrir en apelación a los organismos oficiales dentro de los cinco (5) días laborables siguientes a la determinación del partido.* (Énfasis suplido.)

Como podemos notar, la antes transcrita disposición legal *no* establece requisitos para ser observados por los miembros del partido político que, no estando conformes con la decisión del partido en un caso de esta naturaleza, deseen revisar las mismas. *Por el contrario, dicha disposición legal lo que hace es imponerle a los partidos políticos la obligación de adoptar reglamentariamente las garantías enumeradas en dicho artículo si es que interesa celebrar elecciones mediante métodos internos para la nominación de sus candidatos.* Dicho de otra forma, se supone que dicha disposición legal sea en beneficio del miembro del partido político afectado por la decisión de éste; no en su perjuicio.

No existe razón jurídica válida para la interpretación *extremadamente restrictiva* que hace una mayoría del Tribunal del inciso (i) del citado Art. 4.006-A de la Ley Electoral. Interpretar que ello constituye un requisito sine qua non con el que tiene que cumplir ese miembro del partido político — *so pena de perder su derecho a acudir ante los tribunales*— resulta ser no sólo una interpretación errónea, restrictiva e innecesaria en contravención del *derecho fundamental de acceso a los tribunales* que este Tribunal le ha reconocido a nuestros ciudadanos, *Alicea v. Córdova*, 117 D.P.R. 676 (1986), sino que, a nuestro juicio, constituye una violación al debido proceso de ley aun mayor que la cometida por el Partido Popular Democrático en el presente caso contra el aquí recurrente. Después de todo debe recordarse que reiteradamente hemos resuelto, en relación con situaciones similares, que cuando de las alegaciones de una demanda se desprende un agravio de patente intensidad a los derechos del individuo, se puede obviar el trámite administrativo y acudir directamente a los tribunales de justicia. *Santiago v. Superintendente de la Policía*, 112 D.P.R. 205 (1982); *García Cabán v. U.P.R.*, 120 D.P.R. 167 (1987); *Pedraza Rivera v. Collazo Collazo*, 108 D.P.R. 272 (1979); *Pierson Muller I v. Feijoó*, 106 D.P.R. 838 (1978).

## VI

Por las razones antes expresadas es que disentimos. Revocaríamos, en su consecuencia, la sentencia dictada en el presente caso por el Tribunal Superior de Puerto Rico, Sala de San Juan. Permitiríamos que el recurrente Díaz Delgado pueda aspirar nuevamente al cargo público en controversia en las primarias oficiales generales a ser celebradas por la Comisión Estatal de Elecciones.

—O—

Voto concurrente del Juez Asociado Señor Ortiz, al cual se une el Juez Asociado Señor Alonso Alonso.

La ausencia de dos (2) documentos de importancia vital, dificultan el análisis de los planteamientos sobre el debido proceso de ley y violación al Reglamento del Partido Popular Democrático.[1]

Primero, no tenemos ante nos, por no haberlo acompañado el recurrente, el informe de la Oficial Examinadora, Lic. Marylin Rivera, que según su decisión, fue ponderado por el Secretario General del partido. Segundo, desconocemos por no acompañarse al Escrito de Apelación, qué planteamientos, si algunos, se levantaron ante la Junta de Gobierno del Partido Popular Democrático.

Por otro lado, la contención del recurrente —avalada en las opiniones disidentes— de que el mero hecho de que el candidato victorioso no contestara el documento de impugnación conlleva la anulación del proceso primarista, es claramente improcedente. Aparte de que los motivos de la impugnación están fundados en actuaciones y omisiones de los funcionarios del partido, no atribuibles al licenciado Va-

---

[1] Al decidir debemos recordar que: "No es absoluto ni existe el alegado derecho fundamental a ser candidato a un puesto electivo." *García v. Luciano*, 115 D.P.R. 628, 630 (1984). Opinión del Juez Asociado Señor Negrón García.

lero Zayas, la omisión de éste sólo tendría el efecto de dar por ciertos los hechos alegados. Bajo ninguna circunstancia puede ello decir que dichas alegaciones dan lugar, como cuestión de derecho, a la anulación del proceso.(²)

Aunque coincido con el fundamento de nuestra decisión —el no haberse acudido al organismo oficial, 16 L.P.R.A. sec. 3156a(i), por ser el mismo correcto y suficiente en derecho para sostener la decisión de instancia— expongo estos criterios alternos para una mayor claridad de la situación presente.

—O—

Voto disidente del Juez Asociado Señor Negrón García.

"[E]l sujeto de la democracia es el ciudadano, no los partidos políticos, de ahí que en el Colegio Electoral debe haber prudencia en el manejo del margen de actuación de los votantes; *lo contrario implicaría el predominio de los partidos sobre los ciudadanos, lo que no es democracia sino partidocracia, que es una desviación óntica y pervertida de aquélla,* y lo que es más grave una desnaturalización de la vida democrática, al desconfiar de los ciudadanos." (Énfasis suplido y citas omitidas.) A.E. Mooney, *La elección del Poder Ejecutivo nacional (legalidad versus legitimidad),* 1985E Rev. Jur. Arg. La Ley 545, 547 (1985).

Expediríamos el recurso y oportunamente ordenaríamos la celebración de unas nuevas primarias —bajo la supervisión directa de la Comisión Estatal de Elecciones— para seleccionar el candidato por el Partido Popular Democrático (P.P.D.) a la Alcaldía del Municipio de Salinas. No hacerlo "atenta contra la integridad orgánica de los partidos polí-

---

(²) Como cuestión de realidad, en la decisión del Secretario General del P.P.D. se da por sentado que los hechos alegados son ciertos. El Secretario General del P.P.D. resolvió que estos hechos no ameritaban que se anulara la primaria y se convocara una nueva.

ticos, la moral de sus afiliados *bona fide* y la utilidad democrática de estos eventos". *Santos v. P.P.D.*, 109 D.P.R. 798, 801 (1980), voto disidente del Juez Asociado Señor Negrón García. Expongamos el trasfondo fáctico y jurídico de esta controversia.

## I

El P.P.D. acordó y ordenó dilucidar las candidaturas de sus miembros aspirantes a los comicios de este año de acuerdo con el método alterno de elección interna autorizado en el Art. 4.006-A de la Ley Electoral, 16 L.P.R.A. sec. 3156a.

Esta disposición legal, en lo pertinente, requiere la adopción de un reglamento que garantice la pureza de los procedimientos para candidatos y electores. Entre los extremos de importancia que cabe destacar están los lugares, fecha y horas donde se celebrarán; el acceso previo a los candidatos de las listas de participantes; *un foro adecuado para impugnar las mismas*; selección por sorteo .en presencia de los candidatos o sus representantes de las posiciones y lugar en que han de figurar sus nombres en las papeletas; el derecho a una representación efectiva en las etapas críticas del proceso de selección, tales como en la de elección de delegados, registro y el proceso de votación y escrutinio; el derecho a recusación por las razones dispuestas en la ley y en el reglamento del partido; igual acceso y protección en todas las etapas del proceso; votación libre y secreta, *y que existan mecanismos internos eficaces para impugnar la violación de estas normas*, incluso el derecho a recurrir en apelación a *los organismos oficiales* dentro de los cinco (5) días *laborables* siguientes a la determinación del partido.

A tono con este esquema estatutario, el P.P.D. promulgó su *Reglamento de Primarias Internas del Partido Popular Democrático* (en adelante Reglamento). La Regla 26, que cubre las impugnaciones, dispone:

Cualquier candidato que impugnare la elección de otro deberá presentar ante el Secretario General, dentro de los diez (10) días laborables siguientes a la fecha de notificación de la certificación de los resultados de la elección, un escrito exponiendo *bajo juramento la razón o razones que fundare el mismo, las cuales deberán ser de tal naturaleza que, bastarían para cambiar el resultado de la elección.* Copia fiel y exacta del escrito, se entregará personalmente al impugnado dentro de los cinco (5) días siguientes a su radicación en la Secretaría del Partido Popular Democrático.

Dentro de los diez (10) días siguientes a la fecha en que se recibiere la notificación del escrito, la persona cuya elección fuere impugnada tendrá que radicar ante el Secretario General una contestación bajo juramento al escrito del impugnador, entregándole a éste o a su representante en la Junta de Elecciones Internas, copia de la misma, *disponiéndose que de no contestar en dicho término se entenderá que acepta la impugnación como cierta.* (Énfasis suplido.) *Exhibit* IV, pág. 54.

Además, la Regla 29(8) del Reglamento, *in fine*, dispone que la "notificación, escrito y contestación *prescritas en estas Reglas* podrán ser diligenciadas por cualquier persona competente para testificar, y se *diligenciarán entregándolas personalmente a las respectivas partes, a sus representantes electorales, o dejándolas con alguna persona mayor de diecis[é]is años, en la residencia o lugar de trabajo de la persona a quien fueren dirigidas".* (Énfasis suplido.) *Exhibit* IV, pág. 55.

El 8 de noviembre de 1987 se llevó a cabo dicho procedimiento de primarias internas en el Precinto de Salinas. Un total de cuatro mil quinientos setenta y nueve (4,579) electores votaron por los dos (2) candidatos principales, a saber, el Dr. Felipe Díaz Delgado y el actual Alcalde, Lic. Guillermo Valero Zayas. El primero logró dos mil doscientos cinco (2,205) votos no recusados y el incumbente Valero Zayas dos mil trescientos sententa y cuatro (2,374), esto es, ciento sesenta y nueve (169) más. No conforme, el doctor Díaz Delgado, dos (2) días después, notificó su intención de impugnar

dichas primarias y, el 16 de noviembre, presentó su *Petición de Impugnación* ante el P.P.D. Con la misma acompañó un sinnúmero de declaraciones juradas de electores expositivas de las irregularidades siguientes: entrega tardía del material electoral; algunos colegios electorales no cerraron a las 2:00 P.M., otros fueron reabiertos o permanecieron siempre abiertos; en un colegio electoral había material de propaganda del otro candidato; unos colegios electorales no tenían urnas electorales y en uno la existente era de cartón; no se firmaron por los electores las hojas de cotejo; no se instruyeron ni orientaron debidamente a los delegados presidenciales en propiedad y sustitutos; se llenó una hoja de cotejo fuera del colegio; a un elector se le mutiló intencionalmente la papeleta; a personas que votaban por primera vez no se les permitió votar al asociárseles, por razón de nexos familiares, con electores pertenecientes al Partido Nuevo Progresista (P.N.P.); se permitió a electores entrar a los colegios después de las 2:00 P.M.; muchos electores no votaron; algunos no aparecieron en las listas y fueron recusados, y ciertos colegios electorales no estaban rotulados. Ello generó confusión y dio lugar a que electores se marcharan sin votar.

Esta impugnación fue *notificada* al Alcalde Valero Zayas el 17 de noviembre de 1987, a las 9:00 A.M., a través de su secretaria Nilda Ledée quien, a su vez, entregó la impugnación al Ayudante del Alcalde y Auditor Municipal, Ángel Santiago. Este último acusó recibo de la misma mediante firma. Aun así, *el Alcalde Valero Zayas no contestó la impugnación.* Simplemente, el 1ro de febrero de 1988, notificó al Secretario General del P.P.D., Lic. Antonio J. Fas Alzamora, su criterio de que debió ser notificado personalmente.

El Secretario General Fas Alzamora designó a la Lic. Maritza Rivera para examinar la impugnación y rendirle un informe. Previa vista administrativa, el Secretario General Fas Alzamora declaró *sin lugar* la impugnación. Se fundamentó en que las irregularidades apuntadas —apertura de

colegios tardíamente, entrega de material retrasado y otros— a su juicio, no afectaron la integridad del proceso ni tuvieron un efecto disuasivo en la participación real de los electores. Tales alegaciones se consideraron especulativas. Sobre la omisión de registrarse el voto de los electores en las listas electorales, el Secretario General del P.P.D. estimó que ello no era ilegal ni afectaba el resultado. Concluyó que las papeletas recusadas —aun de acuerdo con la hipótesis de que ellas favorecían al doctor Díaz Delgado— numéricamente no invalidaban la elección. Finalmente, en cuanto a la inobservancia reglamentaria de no haber el Alcalde Valero Zayas contestado la impugnación, el Secretario General del P.P.D. concluyó que ello era un error procesal *no perjudicial* ni podía afectar el resultado final.

Notificado de esta decisión, el doctor Díaz Delgado apeló a la Junta de Gobierno del P.P.D. la cual, mediante decisión de 4 de abril de 1988, confirmó al Secretario General y ratificó al licenciado Valero Zayas como único candidato. Esta decisión fue notificada el viernes 8 de abril.

Mientras tanto, en observancia de las disposiciones sobre primarias de la Ley Electoral, el doctor Díaz Delgado presentó su candidatura al puesto de Alcalde de Salinas y solicitó de la Comisión Estatal de Elecciones las peticiones de endoso que sustentan y gobiernan dicha nominación. Tanto la Comisión Estatal de Elecciones como el representante del P.P.D. se negaron a entregar las peticiones de endoso solicitadas, "impidiendo así de forma radical el derecho del doctor Felipe Díaz de convertirse en candidato a primarias por el Precinto de Salinas del Partido Popular Democrático". *Exhibit* I-B, pág. 15.

Contra la decisión de la Junta de Gobierno, el 14 de abril —dentro del término de cinco (5) días laborables dispuesto en el Art. 4.006-A de la Ley Electoral, 16 L.P.R.A. sec. 3156a(i)— el doctor Díaz Delgado presentó ante el Tribunal Superior, Sala de San Juan, una "Solicitud de *Injunction*

Provisional e Interdicto Preliminar y Permanente" para que se anularan las primarias, descertificaran la candidatura del Alcalde Valero Zayas y se ordenaran unas nuevas primarias. Debido a que la acción judicial se presentó un día antes de la fecha límite fijada para presentar las peticiones de endoso ante la Comisión Estatal de Elecciones, 16 L.P.R.A. sec. 3159, el ilustrado tribunal, por voz del juez Hon. Pedro López Oliver —aun cuando presumió la certeza y veracidad de los hechos alegados, según antes relacionados— aplicó la doctrina de *incuria* y el 15 de abril desestimó el *injunction*.

El 22 de abril, el doctor Díaz Delgado acudió a este Foro. Con carácter urgente solicitó nuestra intervención, reafirmó su pedido de que el P.P.D. instituyera un procedimiento de primarias para el Precinto de Salinas bajo la supervisión de la Comisión Estatal de Elecciones o, en la alternativa, descalifique a Valero Zayas o realice la celebración de unas nuevas primarias internas. Al doctor Díaz Delgado le asiste la razón.

## II

La Ley Electoral, por interacción de sus Arts. 4.006 y 4.008 (16 L.P.R.A. secs. 3156 y 3158), reconoce a todo elector miembro de un partido político el derecho a que se le nomine como candidato a cualquier cargo electivo a través de las primarias, directamente supervisadas por la Comisión Estatal de Elecciones, las cuales se celebrarán el segundo domingo del mes de junio del año de las elecciones generales. Esta regla general sufre una excepción. El Art. 4.006-A de la Ley Electoral antes mencionado confiere a los partidos la alternativa de acogerse a un método que, aunque interno, tiene que estar sujeto a múltiples garantías para asegurar que sus resultados reflejen fielmente la voluntad mayoritaria. El procedimiento está inmerso en el debido proceso de ley y la igual protección de los electores. Por la íntima correspondencia que este esquema tiene con la Constitución, el enfo-

que judicial debe ser cónsono con el espíritu de mayor participación y pureza.

La aplicación al caso de autos de estas disposiciones de ley y reglamentarias nos lleva, como única opción adjudicativa, a revocar al foro de instancia y ordenar unas nuevas primarias. Dos fundamentos apoyan esta decisión.

Primero, las decisiones del Secretario General Fas Alzamora y la Junta de Gobierno del P.P.D. —sancionadas por el Tribunal— son contrarias al propio Reglamento. Éste, clara y taxativamente, dispone que si la persona impugnada no contesta "se entenderá que *acepta la impugnación como cierta*". *Exhibit* IV, pág. 54. Aquí, el Alcalde Valero Zayas no contestó el escrito de impugnación, sino que meramente adujo que no fue debidamente emplazado. Ya hemos visto cómo el propio Reglamento disponía que la notificación realizada fuera válida en derecho.

Ante esta circunstancia, el Secretario General Fas Alzamora no podía —so pretexto de salvar la voluntad de los electores— hacer caso omiso a los efectos procesales y evidenciarios del propio Reglamento. Al descartarlo, infringió patentemente el debido proceso de ley. El Secretario General entremezcló y vició su función de adjudicador imparcial. El resultado de esa actuación fue imprimir un corte oficialista decisivo negativo a la impugnación y legítimas aspiraciones del doctor Díaz Delgado.

Y segundo, las irregularidades cometidas —si bien aisladas, no justificarían nuestra intervención— fueron de tal magnitud y seriedad que, por sus efectos acumulativos, afectaron la integridad y puridad del proceso. "La presunción de regularidad quedó ampliamente destruida." *Santos v. P.P.D.*, supra, pág. 800.

El efecto acumulativo de todas estas irregularidades salta a la vista. Las mismas fueron serias, críticas y de tal naturaleza que anulan el espíritu de la ley. Difícilmente pueden tacharse de mínimas. Menos para concluir que no ameri-

tan un remedio judicial bajo la tesis de que es especulativo un reclamo en el cambio del resultado. La validez de unas primarias internas, de acuerdo con lo dispuesto en el método alterno, está condicionada al cumplimiento cabal de los requisitos de la Ley Electoral.

## III

En instancias de este tipo, corresponde al Poder Judicial limitar la natural tendencia de los partidos políticos y sus maquinarias de controlar el acceso de nuevos candidatos, máxime cuando la lucha se proyecta contra incumbentes. Aunque en otra dimensión, ya hemos rechazado ese trato preferencial y anulado una disposición de ley que legislativamente crea una clasificación que favorece únicamente a los funcionarios incumbentes. *Marrero v. Mun. de Morovis*, 115 D.P.R. 643 (1984).

Ante los hechos específicos del caso de autos, el remedio judicial apropiado sería anular las primarias internas y ordenar —bajo el manto protector de la Comisión Estatal de Elecciones— unas nuevas primarias en el mes de junio. Contra este decreto no es impedimento el tiempo límite fijado en la Ley Electoral. El mismo "debe considerarse como susceptible de ser ampliado como parte del fiel cumplimiento y mandato en ejecución del dictamen . . . . *Cf. P.N.P.* v. *Tribunal Electoral*, 105 D.P.R. 288 (1976)". *Santos v. P.P.D.*, supra, pág. 801.

Finalmente, por varias razones no podemos refrendar la determinación de *incuria* del ilustrado foro de instancia. La tardanza en el proceso decisorio interno no es exclusivamente atribuible al recurrente, doctor Díaz Delgado. Éste inició diligentemente el trámite de impugnación. De haber el Secretario General Fas Alzamora aplicado las disposiciones del Reglamento con tiempo suficiente, el problema pudo remediarse y resolverse sin dejadez. No debe el recurrente

doctor Díaz Delgado cargar sobre sus hombros las consecuencias de esa inobservancia.

Notificado el viernes 8 de abril de la decisión de la Junta de Gobierno del P.P.D. —y conocida la negativa de la Comisión Estatal de Elecciones a entregarle las peticiones de endoso dentro de los cinco (5) días *laborables* previstos por la ley— el doctor Díaz Delgado acudió al tribunal. Es cierto, podía prescindir del trámite ulterior ante la Comisión Estatal de Elecciones. El acudir ante la Comisión Estatal de Elecciones hubiese inexorablemente consumido los pocos días que le restaban para hacer valer sus derechos. Máxime si recordamos que la situación fue creada por la demora en la resolución de su impugnación ante los organismos internos del P.P.D. En estas circunstancias, ¿cómo entonces imponerle el ejercicio de la futilidad procesal de agotar los trámites ante la Comisión Estatal de Elecciones? *Hernández Agosto v. Romero Barceló*, 112 D.P.R. 407 (1982); *Quiñones v. A.C.A.A.*, 102 D.P.R. 746, 750 (1974); *Vda. de Iturregui v. E.L.A.*, 99 D.P.R. 488, 492 (1970). Tal rigurosidad es irrazonable, injusta y desvirtúa el espíritu del estatuto.