Segarra Olivero, Juez Ponente.
TEXTO COMPLETO DE LA SENTENCIA
El 23 de mayo de 1993 la recurrente Carolyn López González le compró al recurrido Carros Usados, Inc., un automóvil marca Nissan Sentra. El precio de venta fue de $5,000. A manera de pago, la recurrente entregó en "trade-in" un vehículo de su propiedad valorado en $1,500.00 y $1,000.00 en efectivo. Los $2,500.00 restantes fueron financiados a través del co-recurrido Banco Financiero.
Al momento de realizarse la compraventa, la recurrente advirtió que el carburador del automóvil estaba averiado. El vendedor le dijo que si eso le provocaba problemas, que lo llevara al "dealer", y allí se lo repararían. La garantía ofrecida por Carros Usados para el vehículo adquirido por la recurrente era de un mes.
Tras la primera semana de uso, la transmisión del carro comenzó a fallar. El esposo de la recurrente llevó el vehículo al "dealer", donde repararon los soportes de la transmisión. El auto siguió presentando problemas, pero el vendedor se negó a repararlo. A las tres semanas *1013 de haberlo adquirido, al vehículo se le dañó la punta del eje. La recurrente envió el carro a un taller de mecánica, donde le arreglaron la punta del eje y del carburador a un costo de $85.00. El vehículo no volvió a funcionar adecuadamente, y ante la negativa del vendedor de honrar la garantía o rescindir el contrato, la querellante radicó el 23 de agosto de 1993 una querella ante el Departamento de Asuntos del Consumidor (D.A.C.O.), solicitando que le arreglaran el vehículo o que cancelaran el contrato.
D.A.C.O. envió un inspector a revisar el vehículo de la recurrente, y se señaló vista administrativa para el 14 de junio de 1994. Comparecieron a la vista la querellante-recurrente, su esposo, su representante legal, y un representante del Banco Financiero. El querellado Carros Usados no compareció. Declaró el Señor Armando Cruz, inspector de D.A.C.O., quien expresó que el carro no prendía por el mecanismo usual de ignición, sino que había que encenderlo por contacto directo con el motor. Interrogado sobre el estado de la transmisión, el señor Cruz alegó que no la inspeccionó, pero que en la prueba de carretera el vehículo funcionó normalmente.
La parte recurrente alegó además que después de la inspección la transmisión volvió a fallar, y que el carro está detenido desde octubre de 1993. La abogada de la recurrente solicitó al Oficial Examinador que ordenara una nueva inspección del automóvil, con el fin de verificar el estado de la transmisión. La inspección nunca se realizó.
El 9 de septiembre se emitió la Resolución de D.A.C.O., en la que se desestimó la querella. El Oficial Examinador determinó que el defecto del carburador no constituye un vicio oculto ya que el mismo era conocido por la compradora desde un principio; que el defecto relativo a la transmisión y los soportes surgieron posteriormente y fueron reparados por la parte querellada; que el defecto en las puntas de los ejes surgió después de tres meses de comprado el vehículo y no hay indicios de que el mismo fuera preexistente, y que el defecto en el "switch" y el selenoide también fue detectado meses después de la compra. La moción de reconsideración radicada por la querellante fue declarada no ha lugar.
De esta determinación la parte querellante solicitó la revisión ante el Tribunal de Primera Instancia. El Tribunal sostuvo la resolución recurrida, fundamentando su decisión en la norma de deferencia judicial a las determinaciones administrativas, y exponiendo que la querellante no produjo evidencia suficiente para demostrar que los defectos en el automóvil se debieran a vicios ocultos. La querellante procedió entonces a radicar el presente recurso. Tras varios incidentes procesales relacionados con la acreditación por parte de la recurrente de la jurisdicción de este foro, la parte recurrida Autos Usados compareció en oposición al recurso. En su escrito se limita básicamente a alegar que el remedio solicitado por la recurrente —la rescisión del contrato— no es factible, ya que el automóvil fue reposeído por el Banco Financiero ante la imposibilidad de la recurrente de seguir efectuando sus pagos.
Examinada la posición de ambas partes, resolvemos cue le asiste la razón a la parte recurrente, por lo que se revoca la sentencia recurrida.
I
Como se indica en la sentencia recurrida, es doctrina firmemente establecida que las determinaciones administrativas merecen gran deferencia por parte de los tribunales, en vista de la vasta experiencia y conocimiento atribuidos a las agencias especializadas. En atención a este principio, los tribunales deben procurar no intervenir en los quehaceres de las agencias administrativas más allá de lo necesario. Agosto Serrano v. F.S.E.,_D.P.R._(1993), 93 J.T.S. 37, a la pág. 10510; Molini v. Negociado, 115 D.P.R. 183, (1984); Murphy v. Tribunal, 103 D.P.R. 692 (1975). Esto no significa, sin embargo, que las determinaciones administrativas estén inmunes a la revisión judicial. Fuertes v. A.R.P.E.,_D.P.R._ (1993), 93 J.T.S. 165, a la pág. 11385. Al igual que es el caso con las determinaciones de *1014 hecho de un tribunal de primera instancia, en el caso de las agencias administrativas que ejercen una función adjudicativa "el arbitrio del juzgador de. los hechos.es respetable, mas no absoluto". Rivera Pérez.v. Cruz. Corchado, 119 D.P.R. 8, 14 (1987); Vda. de Morales v. De Jesús Toro, 107 D.P.R. 826, 829 (1978). De esta manera, si surge del expediente ante la consideración del tribunal que la resolución recurrida no está sostenida por evidencia sustancial, está justificado intervenir con las determinaciones de hecho del organismo administrativo. Ver: Asociación de Doctores v. Morales y Colegio de Optómetras,_D.P.R. _(1993), 93 J.T.S. 12, ala pág. .10349; Silva v. Administración de Retiro,_D.P.R._ (1991), 91 J.T.S. 39; Chase Manhattan v. Emanuelli, 111 D.P.R. 708, 712 (1981).
En el caso de autos, la determinación del Oficial Examinador está predicada, según se señala en la resolución, en su conclusión de que "el efecto relativo a la transmisión y los soportes surgieron posteriormente y fueron reparados por la parte querellada. No hay nada que nos indique que existían antes de la compra-venta." (Enfasis suplido.) La transcripción de la vista nos da una perspectiva completamente distinta. Llamado a declarar y puesto bajo juramento, el señor Mario Cortés, cónyuge de la querellante, testificó lo siguiente:

"MARIO CORTES:...Y entonces a la semana siguiente ya el carro me dio problema. Busqué el carro un viernes y ya el otro sábado el carro me estaba dando problemas nuevamente.

LCD A. LÓPEZ: ¿Qué tipo de problemas?

MARIO CORTÉS: Le volvió los temblores al carro y aparte de eso el carro empezó a encajarse los cambios. Entonces el mecánico llevó el carro atrás al taller, cuando yo lo llamé de nuevo le dije tuve este problema así, entonces el chequió y me dijo a este carro le faltan tomillos. Entonces me dice...él se puso a chequiar el carro y le puso los tornillos...

LCD A. LÓPEZ: ¿Tornillos de qué?

MARIO CORTÉS: El puso los tomillos de la parte de al frente, me dijo.

LCD A. CORTÉS: ¿Soporte de qué?

MARIO CORTÉS: Del motor y la transmisión. Entonces el me indica que a este carro le faltan tomillos porque este carro fue chocado de ese lado y él me enseñó donde está el... tiene bondo, el compacto, está doblao' y él me lo enseñó, mira este carro tiene unas piezas que parece que se han debilitado, o parece que cuando repararon este carro de frente no montaron piezas...."

Esta declaración del testigo no fue contradicha —la parte recurrida no compareció a la vista ni se excusó por ello— como tampoco se impugnó de manera alguna su credibilidad. En su escrito en oposición ante este foro, la recurrida Carros Usados, Inc., no sugiere que el estado real del automóvil en controversia fuera uno distinto al descrito por el señor Cortés en la vista ante el D.A.C.O. De la misma manera, la negativa del Oficial Examinador de ordenar una nueva inspección del carro para corroborar el estado de la transmisión para disipar así cualquier duda que pudiera existir al respecto (procedimiento sugerido por la representación legal de la querellante) nos lleva a pensar que no existía fundamento para dudar de la veracidad de lo declarado por el esposo de la querellante recurrente. Siendo ello así, resulta insostenible la determinación de que los problemas en la transmisión no obedecían a un vicio oculto.
De acuerdo a la doctrina y la jurisprudencia para que una reclamación por vicios ocultos tenga éxito, es necesario que el defecto señalado sea uno oculto o encubierto, desconocido *1015 por el comprador, nocivo a la utilidad de la cosa de tal manera que la haga impropia para el uso al que se destina o que disminuya de tal manera tal uso que, de haberlo conocido el comprador, no la habría comprado o habría dado menor precio por ella, y anterior a la venta, cuando menos en su germen o principio. Boyd v. Tribunal Superior, 101 D.P.R. 651, 658 (1973); Ferrer v. General Motors Co., 100 D.P.R. 246 (1971).
Cuando la acción por vicios ocultos envuelve automóviles defectuosos, la jurisprudencia ha establecido que al adquiriente le corresponde únicamente probar que el automóvil que compró no funcionaba de forma normal y que el vendedor tuvo oportunidad de corregir los defectos y no pudo o no los corrigió. Ford Motor Co. v. Benet, 106 D.P.R. 232, 238 (1978).
Según consta en la transcripción de la vista celebrada ante D.A.C.O., el inspector de esa agencia declaró que cuando él fue a inspeccionar el vehículo, el mismo no podía ser encendido utilizando la llave, sino que era necesario levantar el bonete y hacer contacto directo con el motor. A pregunta de la abogada de la querellante, el señor Cruz responde: "Había que estar levantando el bonete. Y no es normal levantar el bonete ....no es lo normal levantar el bonete para....".
Se expide el recurso de certiorari radicado por la querellante-recurrente Carolyn López González, se revoca la resolución recurrida y se ordena a la parte recurrida Carros Usados, Inc. la devolución de la suma pagada por la parte recurrente como pronto por el automóvil ascendente a $2,500.00, así como el dinero correspondiente a las mensualidades pagadas por ella antes de que el carro fuera reposeído, y los $85.00 invertidos por la recurrente en la reparación del vehículo.
Así lo pronunció y lo manda el Tribunal y lo certfiica la Secretaria General.
María de la C. González Cruz
Secretaria General