ANTONIO GRILLASCA DOMENECH, demandante y recurrente, *v.* COMISIÓN ESTATAL DE ELECCIONES, demandada y recurrida.

*Número:* CE-88-227     *Resuelto:* 29 de abril de 1988

*Luis Hernández Santiago,* abogado del peticionario; la recurrida no compareció.

## RESOLUCIÓN

A la petición de *certiorari,* no ha lugar.

Lo acordó el Tribunal y certifica el Señor Secretario General. El Juez Asociado Señor Ortiz emitió voto particular; al cual se unen el Juez Presidente Señor Pons Núñez, la Juez Asociada Señora Naveira de Rodón y los Jueces Asociados Señores Hernández Denton y Alonso Alonso. El Juez Asociado Señor Negrón García disiente con opinión escrita. El Juez Asociado Señor Rebollo López expediría el recurso.

(*Fdo.*) Bruno Cortés Trigo
*Secretario General*

—O—

Voto disidente del Juez Asociado Señor Negrón García.

### I

Al plasmar separadamente y por escrito nuestro disenso a la negativa de este Tribunal a expedir y oportunamente reivindicar los derechos de Antonio Grillasca Domenech, recordamos que, "[o] el derecho es la ley, o el derecho es lo justo. Si la ley es hija de lo justo, lo jurídico —como se usa habitualmente— no se presentará como contradictorio a lo debido. Si la ley es fruto de la voluntad omnipotente del mandón de turno —individuo o parlamento— el juez será un absurdo personaje, cuya tarea deductiva bien puede suplantarse por una máquina electrónica. Pues uno y otra serán igualmente estériles". C.R. Sanz, *Consideraciones en torno al abuso del derecho,* 1981-B Rev. Jur. Arg. La Ley 886, 904 (1981). Reproduzcamos los trámites y hechos peculiares de este drama social y jurídico, según surgen de la petición y sus anejos.

Desde mayo de 1987, Grillasca Domenech, miembro *bona fide* del Partido Popular Democrático (P.P.D.), comunicó al

Secretario General del P.P.D., Lic. Antonio Fas Alzamora, su deseo de que se celebraran primarias en el Municipio de Caguas para la nominación de Alcalde por dicho partido para las próximas elecciones generales de 1988. No tuvo éxito. A tono con sus aspiraciones, hace tres (3) meses —el 27 de enero de 1988— presentó *oficialmente* ante la Comisión Estatal de Elecciones una solicitud al efecto. El Secretario General, licenciado Fas Alzamora, se negó a recibir los documentos que debían presentarse en las Oficinas del Comité Central del P.P.D. y, además, a entregarle los documentos necesarios para perfeccionar el trámite ante la Comisión Estatal de Elecciones, en particular, los formularios de peticiones de endoso que tenían que recibirse en ese organismo en o antes de 15 de abril.

Esta actitud y negativa obligó a Grillasca Domenech a solicitar el 15 de marzo del Tribunal Superior, Sala de San Juan (KPE-88-0347), un auto de *injunction* preliminar y permanente encaminado a obligar al Secretario General del P.P.D., licenciado Fas Alzamora, la entrega de dichos formularios de peticiones de endoso. El 28 de marzo el foro judicial celebró una conferencia con antelación a la vista. Comparecieron todas las partes representadas por sus respectivos abogados. Como resultado, el tribunal emitió una orden que, en lo pertinente, dispuso:

> Atendido los planteamientos de las partes, el Tribunal expide auto de Injunction Preliminar y le *ordena al Secretario Ejecutivo del PPD que reciba la petición de primarias del demandante, Antonio Grillasca Domenech,* y los documentos complementarios de la misma y *que proceda a entregarle a éste, dentro del término de 24 horas los formularios de peticiones de endoso.*
>
> *Cualquier reparo que pueda tener el PPD y su Comité Ejecutivo a la Solicitud de Primarias de este demandante, deberá formularlo siguiendo el trámite que dispone la Ley de Primarias o sea, mediante la radicación de una querella de descalificación contra el peticionario en la Sala del Tribunal Superior con competencia.* (Énfasis suplido.)

Este mandato —claro, sencillo y justo— debió poner punto final a la intervención del Poder Judicial y dar comienzo inmediato a la rutina interna administrativa en las Oficinas del P.P.D y de la Comisión Estatal de Elecciones. No fue así. La odisea continuó.

No fue hasta las 4:30 P.M. de 30 de marzo que Grillasca Domenech recibió la certificación del licenciado Fas Alzamora y la autorización del Comisionado Electoral, Lic. Eudaldo Báez Galib, para que la Comisión Estatal de Elecciones le entregara las peticiones de endoso. A esa hora la Comisión Estatal de Elecciones ya estaba cerrada. Tuvo entonces que acudir el jueves 31 de marzo a las 9:00 A.M. A las 12:30 del mediodía recibió *sólo* la mitad de mil seiscientas (1,600) peticiones, porque los impresos se habían agotado. Regresó a buscar el remanente el próximo lunes 4 de abril. Sin embargo, continuó la demora. No fue hasta el miércoles, 6 de abril, a las 9:30 A.M. que recibió las mismas.

En consideración a lo azaroso del trámite, el 8 de abril Grillasca Domenech acudió nuevamente al Tribunal Superior, Sala de San Juan, con una solicitud de *injunction* preliminar (KPE-88-0470), dirigida esta vez contra el Lic. Marcos Rodríguez Estrada y Néstor J. Colón Berlingeri, Presidente y Secretario, respectivamente, de la Comisión Estatal de Elecciones. Bajo juramento expuso los hechos que anteceden y suplicó al tribunal una prórroga del plazo que vencía el 15 de abril, estatuido en el Art. 4.009 de la Ley Electoral, 16 L.P.R.A. sec. 3159, para presentar el número de peticiones de primarias acorde con la fórmula legal dispuesta. El 13 de abril el tribunal denegó, por improcedente en derecho, ese remedio.

Inconforme, Grillasca Domenech acudió el 25 ante nos. Debimos expedir, revisar y acceder a su pedido.

## II

En nuestro disenso certificado hoy en *Díaz Delgado v. P.P.D.*, 121 D.P.R. 165, 178 (1988), hicimos hincapié en que el "'sujeto de la democracia es el ciudadano, no los partidos políticos, de ahí que en el Colegio Electoral debe haber prudencia en el manejo del margen de actuación de los votantes; *lo contrario implicaría el predominio de los partidos sobre los ciudadanos, lo que no es democracia sino partidocracia, que es una desviación óntica y pervertida de aquélla,* y lo que es más grave una desnaturalización de la vida democrática, al desconfiar de los ciudadanos.' (Énfasis suplido y citas omitidas.) A.E. Mooney, *La elección del Poder Ejecutivo nacional (legalidad versus legitimidad)*, 1985-E Rev. Jur. Arg. La Ley 545, 547 (1985)". (Énfasis en el original.) Con igual énfasis, nos negamos allí a aplicar la doctrina de *incuria* ante unos hechos en que la tardanza del elector aspirante a unas primarias para la nominación a la Alcaldía de Salinas era atribuible al incumplimiento, por los organismos internos del P.P.D., de importantes disposiciones de su reglamento. Al sostener entonces que Díaz Delgado era acreedor a unas nuevas primarias bajo el manto protector de la Comisión Estatal de Elecciones, concluimos que el límite fijado en la Ley Electoral era, en circunstancias meritorias, "susceptible de ser ampliado como parte del fiel cumplimiento y mandato en ejecución del dictamen . . . . *Cf. P.N.P.* v. *Tribunal Electoral*, 105 D.P.R. 288 (1976)". *Santos v. P.P.D.*, 109 D.P.R. 798, 801 (1980), voto disidente del Juez Asociado Señor Negrón García.

El presente caso de Grillasca Domenech debió seguir igual ruta reivindicatoria. Ejemplariza cómo mediante obstáculos irrazonables se entremezclan —intencional y fortuitamente— las omisiones y acciones de un partido político con

los trámites burocráticos de la Comisión Estatal de Elecciones, y de ese modo se lesionan sensiblemente derechos políticos derivados de la Constitución y de la Ley Electoral. Aquí nadie cuestiona seriamente que Grillasca Domenech ha sido diligente y solícito en el reclamo de sus legítimas aspiraciones. Aun cuando con tiempo suficiente agotó los trámites internos y legales, le fueron erigidas barreras infranqueables.

Acudió al tribunal e hizo valer sus derechos. En la primera ocasión, dicho foro lo respaldó y ordenó que en escasas horas el P.P.D cumpliera con lo que durante varias semanas se negó. Este decreto inicial no fue suficiente. La demora siguió. Después surgió —a modo de tragicomedia— la dilación adicional resultante de haberse agotado el material bajo el control de la Comisión Estatal de Elecciones. Transcurrieron varios días más y, con ello, valioso tiempo.

Ante este cuadro fáctico, no comprendemos cómo el tribunal rechaza su petición. Existen razones de peso para acceder. Primero, nuestra interpretación sobre la Ley Electoral y sus reglamentos debe fundarse no sólo en su texto, sino en el "espíritu que [la] inspiró. *P.N.P.* v. *Tribunal Electoral,* 104 D.P.R. 1 (1975)". *P.S.P.* v. *Tribunal Electoral,* 104 D.P.R. 230, 235 (1975). Conocido es de todos la renuencia natural en los partidos políticos de abrir las candidaturas por medio de las primarias. Razones de unidad, costos y resentimientos son algunas de las consideraciones para esta fenomenología política. El Informe de la Comisión Especial de la Asamblea Legislativa para Revisar el Proceso Electoral refleja esta realidad al consignar que el "'mecanismo de primarias ha traído consecuencias positivas y *negativas para los partidos políticos.* Por un lado ha permitido la renovación democrática del liderato y la participación más amplia del electorado. *Por otro lado, ha representado unas luchas internas en los partidos, las cuales han producido divisiones que debilitan éstos a la vez que representan una inversión*

*de recursos considerables que afectan las posibilidades de candidatos sin esa disponibilidad material'".* (Énfasis suplido.) Informe de la Comisión Especial de 17 de mayo de 1982, págs. 39–40, citando a H.L. Acevedo, *Los procesos de nominación de candidatos,* 17 de diciembre de 1981, Apéndice 16, pág. 330. Este enfoque encontró eco en el Art. 4.006-A de la Ley Electoral que autoriza, como excepción, métodos alternos de selección frente al Art. 4.006 que reconoce a todo elector tal derecho. 16 L.P.R.A. secs. 3156a y 3156, respectivamente.

Segundo, el pedido de Grillasca Domenech es perfectamente armonizable con el esquema y espíritu de la ley. Veamos. En la cronología operacional, la ley fija el 15 de marzo como último día para presentar las candidaturas, y el 15 de abril para la presentación de las peticiones de endoso. 16 L.P.R.A. secs. 3158a y 3159. Matemáticamente hablando, la diferencia es de treinta (30) días. Reconocemos que la observancia de estos términos es vital para la adecuada ordenación de las labores de la Comisión Estatal de Elecciones y, de ordinario, requisito para ser certificado como candidato conforme la ley. Sin embargo, no pueden estimarse absolutamente fatales en toda situación. El exigir que estas fechas límites sean acatadas tiene que fundarse en que no ha existido obstáculo o circunstancia de demora atribuible a la Comisión Estatal de Elecciones.

Y tercero, el término per se no es improrrogable. A tal efecto, el propio Art. 4.013 de la Ley Electoral, 16 L.P.R.A. sec. 3163, extiende por diez (10) días la fecha de 15 de abril, cuando la devolución de las peticiones por la Comisión Estatal de Elecciones afecta la certificación de un candidato. Si ante tales trámites burocráticos el Legislador automáticamente amplió el plazo, ¿cabe negar igual enfoque y solución por el Poder Judicial en circunstancias más justas y meritorias?

Hoy no sólo queda frustrada la candidatura de Díaz Delgado para Salinas, sino también la de Grillasca Domenech para Caguas. En ambos este Tribunal, sin desearlo, ha optado por interpretaciones restrictivas. Al hacerlo hemos sancionado la natural tendencia de los partidos políticos y sus maquinarias de controlar el acceso de nuevos candidatos, sobre todo contra los incumbentes. La nota irónica de estas decisiones es que contradicen el sentir legislativo que, con referencia a las primarias, reconoció que "[d]e nada vale una buena ley si no es efectiva. *Ello produce el desamparo legal de los procesos reales y la indefensión de los que puedan ser atropellados*". (Énfasis suplido.) Informe de la Comisión Especial de 17 de mayo de 1982, *supra*, pág. 39.

—O—

Voto particular del Juez Asociado Señor Ortiz, al cual se unen el Juez Presidente Señor Pons Núñez, la Juez Asociada Señora Naveira de Rodón y los Jueces Asociados Señor Hernández Denton y Señor Alonso Alonso.

Como seres humanos imperfectos con las limitaciones inherentes que la mayoría tenemos, no podemos pensar que todas nuestras actuaciones judiciales son perfectas; que siempre llegamos a un resultado justo y que hemos interpretado correctamente el derecho aplicable. Sólo podemos aspirar, al igual que todos los miembros de este Tribunal, a que en la mayoría de las ocasiones lo logremos y que, cuando no lo hagamos, nuestra conciencia esté tranquila. Por más seguros que estemos de nuestra posición, siempre respetaremos los criterios contrarios. Así lo hacemos en este caso.

Estimo necesario emitir un voto separado, no por miedo, temor o creencia de que la historia me tilde de absurdo y estéril personaje sujeto a ser suplantado por una máquina electrónica, sino porque estimo que la decisión que hoy ha tomado este Tribunal, además de seguir la ley, no resulta in-

justa. Claro está, al afirmar lo anterior no cuestionamos que para algunos juristas y analistas, en la práctica, puede haber un abierto conflicto entre los conceptos teóricos, legales y filosóficos que definen y enmarcan lo que es justo y jurídico. Pero de ordinario, no hay tal conflicto. En este caso no lo hay. Veamos los hechos y el derecho aplicable.

El señor Grillasca Domenech aspira a ser candidato por el Partido Popular Democrático al puesto de Alcalde del Municipio de Caguas. Con miras a lograr dicho objetivo presentó el 15 de marzo de 1988 una petición de *injunction* en el Tribunal Superior, Sala de San Juan (KPE-88-0347). Los demandados eran el Presidente y otros funcionarios del partido. Alegó, en lo pertinente, que desde el mes de julio de 1986 ha venido solicitando primarias para la alcaldía de Caguas y que el 19 de mayo de 1987 le envió una carta al Secretario General del partido exigiendo primarias.[1] Sostenía que el Secretario General se había negado a reunirse con él, a recibir los documentos que el aspirante debía presentar en las Oficinas del Comité Central del partido y a entregarle los documentos necesarios para completar el trámite de solicitud de trámite.[2]

El tribunal denegó el remedio solicitado por haberse remitido el recurso el mismo día en que vencía el término para presentar candidaturas para los puestos públicos sujetos a elección general. Art. 4.008-A de la Ley Electoral, 16 L.P.R.A. sec. 3158a.

Por vía de reconsideración, el aspirante señaló, entre otras cosas, que el Art. 4.009 de la Ley Electoral, 16 L.P.R.A. sec. 3159, concedía hasta el 15 de abril de 1988 para presen-

[1] Incorporamos estas alegaciones de la solicitud de *injunction* preliminar. El recurrente no acompañó copia de la petición jurada de *injunction*.

[2] Por no surgir de los documentos que se acompañaron por el peticionario, desconocemos los motivos o fundamentos del partido para no acceder a los alegados requerimientos del señor Grillasca Domenech. Por ello no tenemos fundamento en el récord para imputarle motivos impropios a los demandados.

tar peticiones de primarias. El tribunal canceló la sentencia de archivo y citó a las partes para una vista. Luego de escuchar a las partes dictó, el 28 de marzo de 1988, la providencia siguiente:

Atendido los planteamientos de las partes, el Tribunal expide auto de Injunction Preliminar y le ordena al Secretario Ejecutivo del PPD que reciba la petición de primarias del demandante, Antonio Grillasca Domenech, y los documentos complementarios de la misma y que proceda a entregarle a éste, dentro del término de 24 horas los formularios de peti- ciones de endoso.

Cualquier reparo que pueda tener el PPD y su Comité Ejecutivo a la Solicitud de Primarias de este demandante, deberá formularlo siguiendo el trámite que dispone la Ley de Primarias o sea, mediante la radicación de una querella de descalificación contra el peticionario en la Sala del Tribunal Superior con competencia.

La orden por escrito fue notificada a las partes el 29 de marzo de 1988.[3] El 30 de marzo, a las 4:30 el demandante recibió la certificación por parte del Secretario General y la autorización del Comisionado Electoral para que la Comisión Estatal de Elecciones le entregara las peticiones de endoso. El 31 de marzo el demandante recibió en la Comisión Estatal de Elecciones la mitad de las peticiones porque éstas se habían agotado. El 6 de abril recibió la otra mitad. El 8 de abril presentó la petición de *injunction* objeto de este recurso. Los únicos demandados en el presente caso son el Presidente y el Secretario de la Comisión Estatal de Elecciones. Luego de exponer los hechos, la única súplica de la petición es la siguiente:

Ordene a los demandados a concederle los 30 días reglamentarios que por ley tiene derecho el demandante para que

---

[3] No surge la hora. Véase certificación de la Secretaria Auxiliar del Tribunal. No sabemos si la orden de 28 de marzo se emitió verbalmente en la vista.

el peticionario pueda ejercer su derecho a figurar como candidato a las primarias para escoger el candidato del Partido Popular Democrático para las elecciones generales del mes de noviembre de 1988.

El mismo ilustrado magistrado que había favorecido la petición inicial del aspirante, le denegó el remedio en este caso.

La razón para tal decisión fue la siguiente:

Atendida la referida solicitud del demandante, se declara la misma SIN LUGAR por improcedente en derecho y en su consecuencia dicta [s]entencia desestimando [*sic*] la demanda.

Denegada su oportuna moción de reconsideración, acudió ante este Tribunal.

Por ser falibles y no tener el monopolio de la razón, podemos estar equivocados. Si estamos lo hacemos con la tranquilidad de espíritu y la imparcialidad que en el ejercicio de nuestra función judicial nos exige la Constitución, las leyes, y los Cánones de Ética Judicial. Al así actuar no estamos validando la "voluntad omnipotente del mandón de turno". C.R. Sanz, *Consideraciones en torno al abuso del derecho*, 1981-B Rev. Jur. Arg. La Ley 886, 904 (1981).

El tribunal de instancia llegó a un resultado justo y jurídico. La petición era improcedente por una razón tan evidente que hiere la retina. La solicitud de prórroga, de ser procedente, tenía que hacerse en el foro administrativo. Es la Comisión Estatal de Elecciones la que tiene la facultad, el poder, la discreción y el conocimiento especializado para conocer, ventilar y resolver este asunto. 16 L.P.R.A. sec. 3163. Bajo los hechos presentes no había razón para que el tribunal interviniera para sentarle pautas a la Comisión Estatal de Elecciones.[4]

---

[4] Sin adelantar criterios sobre si procedía la prórroga, es preciso señalar que este Tribunal ha reconocido que de ordinario es la Comisión Estatal de Elec-

Por los anteriores motivos, concurro con la decisión que hoy ha tomado este Tribunal. De ser correctas y procedentes las premisas de la disidencia sobre las actuaciones impropias e inconstitucionales del P.P.D., las mismas deben ventilarse en la acción de daños y perjuicios que está pendiente de trámite en el caso KPE-88-0347.

---

ciones la que debe ventilar controversias bajo el Art. 4.013 de la Ley Electoral, 16 L.P.R.A. sec. 3163. Véase *Escalona Vicenty v. C.E.E.*, 115 D.P.R. 529 (1984), opinión del Juez Asociado Señor Negrón García.