NEFTALÍ GARCÍA MARTÍNEZ, demandante y recurrente, *v.* COMISIÓN ESTATAL DE ELECCIONES Y OTROS, demandada y recurrida.

*Número:* CC-96-310          *Resuelto:* 30 de septiembre de 1996

*Pedro J. Varela* y *Pablo Martínez Archilla*, abogados del peticionario; *David Rivé Rivera*, abogado de la Comisión Estatal de Elecciones, recurrida; *Gilberto Concepción Suárez*, abogado del Partido Independentista Puertorriqueño, recurrido; *Carlos Lugo Fiol, Procurador General*, y *Edda Serrano Blasini, Subprocuradora General*, abogados del Estado Libre Asociado de Puerto Rico.

Sala de verano integrada por el Juez Presidente Señor Andréu García y los Jueces Asociados Señor Negrón García, Señor Hernández Denton y Señor Corrada Del Río.

— O —

Opinión disidente del Juez Asociado Señor Negrón García.

Nuestra arquitectura constitucional vigente consagra la inviolabilidad del ser humano, la *igualdad ante la ley y prohíbe el discrimen por ideas políticas*. Art. II, Sec. 1, Const. E.L.A., L.P.R.A., Tomo 1. También reconoce, como protagonistas potenciales en toda contienda electoral, no sólo a los candidatos nominados por los partidos políticos, sino a los *candidatos independientes*. Art. III, Sec. 8, Const. E.L.A., L.P.R.A., Tomo 1. ¿Cómo puede, entonces, la mayoría de este Tribunal perpetuar el trato desigual[1] y discriminatorio sobre fondos públicos creado de manera

---

[1] "Las leyes garantizarán la expresión de la voluntad del pueblo mediante el sufragio universal, igual, directo y secreto, y protejerán al ciudadano contra toda

absoluta por la Asamblea Legislativa, entre candidatos afiliados a un partido político y los no afiliados (independientes)?

"Parece olvidado que nuestra Constitución protege no sólo a los electores que militan en el P.N.P., P.P.D. y P.I.P., sino a todos." A fin de cuentas, "[e]l derecho al sufragio, espina dorsal del cuerpo de la democracia, opera y se fortalece de aires y corrientes liberales". *P.S.P. v. Com. Estatal de Elecciones*, 110 D.P.R. 400, 423 (1980).([2]) También parece olvidado que "[l]a igualdad es ingrediente medular del ideal de justicia que constantemente late en la Constitución. Por su naturaleza dinámica es susceptible de manifestarse en diversas dimensiones". *P.R.P. v. E.L.A.*, 115 D.P.R. 631, 633 (1984). Aplicamos estos principios ante el reclamo de fondos públicos del Sr. Neftalí García Martínez, *candidato independiente* al cargo de Senador por Acumulación en las próximas elecciones.

## I

García Martínez fue así certificado por la Comisión Estatal de Elecciones el 5 de febrero de 1996, *luego de cumplir satisfactoriamente todos los requisitos de la Ley Electoral de Puerto Rico, entre ellos, presentar como mínimo ocho mil doscientas diecisiete (8,217) peticiones de endoso.*([3])

Días después, el 13 de febrero, *diligentemente* solicitó que la Comisión le reconociera su participación en el fondo electoral para gastos administrativos de campaña, infor-

---

coacción en el ejercicio de la prerrogativa electoral." Art. II, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 261.

([2]) *Sánchez y Colón v. E.L.A. II,* 134 D.P.R. 503 (1993), opinión disidente del Juez Asociado Señor Negrón García.

([3]) El Art. 4.027 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3177, dispone que los candidatos independientes al cargo de Senador o Representante por Acumulación presentarán peticiones de nominación en una cantidad igual al cinco por ciento (5%) del total de votos emitidos para Gobernador en las elecciones generales precedentes, dividido entre once (11).

mar a los electores de su programa y transportarlos el día de las elecciones. Invocó las garantías y los derechos concedidos bajo nuestra Constitución y la federal. El 28 de marzo, la Comisión denegó su pedido.([4])

En revisión, el ilustrado Tribunal de Primera Instancia (Hon. Ángel G. Hermida, Juez), luego de varios trámites procesales, desestimó el recurso.([5]) El reputado Tribunal de Circuito de Apelaciones confirmó.([6]) Acudió ante nos mediante un *certiorari.*

## II

Hace tiempo reconocimos que en nuestra Constitución "son cognoscibles, como objetivos legítimos consustanciales al proceso democrático, *medidas razonables tendentes a disminuir las diferencias económicas y ventajas entre los partidos y candidatos por razón de desigualdades en riqueza ...".* (Énfasis suplido.) *P.N.P. v. Tribunal Electoral,* 104 D.P.R. 741, 751 (1976).

Hoy día, no se cuestiona seriamente que la distribución de fondos públicos debe regirse por la paridad entre los partidos políticos. *P.S.P. v. Srio. de Hacienda,* 110 D.P.R. 313 (1980). *¿Cómo sostener una total desigualdad en relación a los candidatos independientes? ¿No da ello una ventaja tan poderosa a los partidos políticos, que casi imposibilita que los segundos tengan posibilidades de triunfar?*([7])

---

([4]) Dictaminó que "[d]e acuerdo con la ley, los candidatos independientes, a excepción de los candidatos independientes a gobernador en cuanto al crédito para transportación de electores, Artículo 3.027, no participan del fondo electoral". Apéndice, pág. 25C.

([5]) Concluyó que el escrutinio aplicable para determinar la constitucionalidad de la Ley Electoral de Puerto Rico bajo la igual protección de las leyes era el *tradicional.* Bajo tal escrutinio sostuvo su constitucionalidad.

([6]) Panel integrado por su Presidente, Honorable González Román y Honorables Jueces López Vilanova y Rivera de Martínez. La Juez López Vilanova emitió voto disidente.

([7]) En las once (11) elecciones generales celebradas en Puerto Rico a partir del nacimiento de nuestra Constitución en 1952, sólo el señor Santos Ortiz (Alcalde de Cabo Rojo) ha sido el único candidato independiente electo.

Una vez más estamos de frente a "la figura patológica, de la partidocracia, anatema de una verdadera democracia". *P.I.P. v. C.E.E.*, 120 D.P.R. 580, 662–663 (1988). Véanse: *Noriega v. Hernández Colón*, 126 D.P.R. 42 (1990); *Gierbolini Rodríguez v. Gobernador*, 129 D.P.R. 402 (1991); *Sánchez y Colón v. E.L.A. I*, 134 D.P.R. 445 (1993); *Com. Electoral P.I.P. v. C.E.E.*, 139 D.P.R. 48 (1995), opinión disidente.

La ayuda económica gubernamental a candidatos a puestos electivos no es *materia exclusiva* ni puéde ser objeto de monopolio por los partidos políticos. Reconocida y conferida a un ciudadano particular la certificación como candidato independiente, no puede sostenerse un trato desigual total en esta materia. *Unas elecciones fundamentalmente democráticas requieren que todos los candidatos a un puesto electivo tengan un potencial mínimo económico, como corolario a una participación en igualdad de condiciones.* Es inconstitucional y antidemocrático que un candidato, financiado con fondos públicos por estar afiliado a un partido político, se postule frente a otro que, con igual o mayor endoso ciudadano, carece de subsidio de fondos públicos sólo por ser un candidato independiente.

Debe despejarse toda confusión. "El partido [político] no es el elemento ultimador, sino un vehículo de expresión individual que se suma a otros para resultar y viabilizar la expresión colectiva ciudadana." *P.S.P. v. Com. Estatal de Elecciones*, supra, pág. 407. La referencia en nuestra Constitución y en la Ley Electoral de Puerto Rico a los partidos políticos no es con abstracción de los miembros que lo componen. Aunque poseen personalidad jurídica, *los partidos políticos deben su existencia, actúan, funcionan y se pronuncian a través de sus miembros, organismos directivos y candidatos a puestos electivos. No viceversa.*

Así entendido, en la arena electoral, los candidatos independientes realmente compiten contra otros candidatos que, por estar afiliados, se postulan bajo el emblema de un

partido político. *Esa sola diferencia no es suficiente para
negarles acceso a los fondos públicos.* Si la propia Ley Electoral de Puerto Rico los equipara[8] en cuanto a presentar
las peticiones de nominación, estado de situación financiero y les impone las mismas limitaciones respecto a recibir contribuciones voluntarias, ¿existe justificación racional para no equipararlos en sus derechos? ¡Claro está,
reconociendo diferencias razonables en las cuantías a recibir!

La creación y distribución del Fondo Electoral[9] por la
Asamblea Legislativa que asigna fondos *únicamente* a los
partidos políticos y candidatos *independientes* al cargo de
gobernador, tiene el defecto constitucional de excluir a los
candidatos *independientes* a otros cargos electivos, *aun
cuando ellos, repetimos, tienen que cumplir, igual que los
demás, con todas las exigencias y requisitos constitucionales de ley y reglamento.*

## III

La clasificación entre partidos políticos y candidatos independientes toca íntimamente el ámbito político operacional y afecta los derechos de todos los electores, que endosaron al candidato independiente, a luchar inicialmente en
igual condición económica que los demás. Tiene también
un efecto disuasivo para los posibles candidatos independientes que deseen participar en nuestro proceso electoral.

---

[8] Los candidatos independientes también deben presentar su candidatura ante
la Comisión Estatal *en la misma fecha dispuesta para los candidatos de los partidos*
y todas sus peticiones, no más tarde de 31 de enero del año de las elecciones generales; presentar en la Comisión su estado de situación revisado y jurado; de ser
electo, rendir un estado de situación financiera auditado; *no podrán recibir contribuciones voluntarias de una persona natural o jurídica en exceso de mil dólares ($1,000)
anuales*; llevar una contabilidad completa y detallada de toda contribución recibida
en o fuera de Puerto Rico y de todo gasto en que incurrió; y rendir cada tres (3) meses
un informe juramentado de dichas contribuciones y gastos.

[9] Los Arts. 3.021 a 3.027 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. secs.
3114–3119.

Estamos, entonces, ante una clasificación inherentemente sospechosa que requiere un *estricto escrutinio judicial.* El Estado no ha demostrado las existencias de un interés apremiante que beneficie y justifique el interés común y que haga necesaria tal clasificación discriminatoria. *Com. de la Mujer v. Srio. de Justicia,* 109 D.P.R. 715 (1980); *Zachry International v. Tribunal Superior,* 104 D.P.R. 267 (1975). El argumento principal aducido es estrictamente económico, esto es, que la disponibilidad de un fondo electoral para candidatos independientes proliferaría ese tipo de candidatura en *detrimento del erario.* Amén de ser *especulativo,* ¿puede seriamente sostenerse que el sólo impacto económico es un criterio suficiente para la exclusión? ¿No alegó implícitamente lo mismo el Estado años atrás en el caso *P.S.P. v. Srio. de Hacienda,* supra? El costo económico de una asignación legislativa razonable, ¿es más importante que fortalecer la democracia puertorriqueña? ¿No se nutre también la democracia de opiniones contrarias, disidentes y heterodoxas fuera de la esfera de los partidos políticos?

La legitimidad de establecer como *único criterio* para la utilización de fondos públicos el respaldo o patrocinio de un partido político, vulnera la propia Ley Electoral de Puerto Rico, en cuanto el proceso político decisional puertorriqueño responda en su realidad al mandato de igualdad consagrado en la Constitución. *P.S.P. v. Srio. de Hacienda,* supra. Crece al ampliar la libertad de expresión ciudadana; al facilitar, no entorpecer, los candidatos no afiliados, comprometidos también con servir responsablemente a nuestro pueblo.

Según hemos indicado, toda persona que interese ser certificada como candidata independiente a algún puesto electivo tiene, por mandato de ley, que cumplir con rigurosos requisitos sustantivos y procesales. No es tarea fácil, sino compleja. De hecho, para estas elecciones generales, además de García Martínez y la Sra. Marta Font Viuda de

Calero, sólo siete (7) aspirantes a Alcaldías y dos (2) candidatos a Asambleas Municipales quedaron certificados. Quien logra ser certificado como candidato independiente es acreedor a credenciales que presuponen interés, razones y deseos genuinos de representar adecuadamente a los electores.

Es evidente pues —no se cuestiona— que el Fondo Electoral adolece del defecto inconstitucional de subinclusión, esto es, excluye de sus beneficios a los candidatos independientes. Nada impide a este Tribunal, en aras de salvar su validez, conceder unos beneficios mínimos a aquellos candidatos que como clases están excluidos. *Milán Rodríguez v. Muñoz*, 110 D.P.R. 610, 618 (1981); *Sánchez Colón v. E.L.A. I,* supra; *Lasso v. Iglesia Pent. La Nueva Jerusalem*, 129 D.P.R. 219 (1991); *Banco Popular v. Mun. de Mayagüez*, 126 D.P.R. 653 (1990).

En ausencia de un esquema que haga viable una distribución equitativa del Fondo Electoral, a escasos días de las elecciones generales, no podemos posponer el remedio en espera de una posible acción legislativa. *P.R. Tel. Co. v. Martínez*, 114 D.P.R. 328, 349 (1983); *Figueroa Ferrer v. E.L.A.*, 107 D.P.R. 250, 277 (1978); *Sostre Lacot v. Echlin of P.R., Inc.*, 126 D.P.R. 781, 798 (1990). *García Martínez es acreedor a un remedio judicial temporal, hasta que la Asamblea Legislativa actúe* y asigne aquellos fondos públicos necesarios. *P.S.P. v. Srio. de Hacienda,* supra. Como intérpretes de nuestra Constitución, estamos obligados a reinvindicar ese derecho. La tarea, aunque difícil, no es imposible. *Elaboremos esto.*

## IV

Detectamos en la Ley Electoral de Puerto Rico y en la reglamentación pertinente unos indicadores legislativos, a modo de elementos de juicio, que nos sirven para nutrir la

conciencia judicial.([10]) De entrada, la cuantía debe guardar relación con la naturaleza del cargo. García Martínez aspira a ser Senador por Acumulación, lo que conlleva una campaña a través de toda la isla. Sin embargo, es acreedor a una cantidad sustancialmente menor a la que correspondería a un partido político, ya que estos distribuyen su Fondo Electoral entre todos sus candidatos.

El indicador más neutral y *objetivo* que posee la Ley Electoral de Puerto Rico es, que al candidato independiente se le requiere un mínimo de apoyo electoral para certificar su candidatura. Aquí a García Martínez se le exigió ocho mil doscientos diecisiete (8,217) peticiones. Conscientes de que el remedio no es perfecto —como aproximación al ideal constitucional— estimaríamos razonable concederle un dólar ($1.00) por cada endoso requerídole, esto es, ocho mil doscientos diecisiete dólares ($8,217).

## V

En la política puertorriqueña tradicionalmente ha predominado el control rígido de los partidos políticos y sus maquinarias sobre el proceso de candidaturas.

Reconocerlo así es un imperativo jurídico-constitucional. El crecimiento fortalecido de la democracia no puede dejarse, absolutamente, en manos de los partidos políticos. Es ingenuo esperar que la Asamblea Legislativa, sin nuestro mandato, asigne *motu proprio* fondos a los can-

---

([10]) Nos referimos a que cada petición de inscripción deberá estar jurada ante un notario público, por lo que la Comisión Electoral, a título de honorarios, satisfará a los partidos con un (1) dólar por cada petición. 16 L.P.R.A. sec. 3101(3).

Por otro lado, la Ley Electoral de Puerto Rico asigna los fondos que han de ser entregados a los partidos políticos, *en un año eleccionario*, de tres (3) formas diferentes: *Primero*, cada partido tendrá derecho a un máximo de seiscientos mil dólares ($600,000) (16 L.P.R.A. sec. 3116); *segundo*, establece un crédito adicional a base de un dólar con cincuenta centavos ($1.50) por cada elector en el Registro General de Electores para ser repartido por partes iguales entre los partidos (16 L.P.R.A. sec. 3117), y *tercero*, otorga un crédito para gastos de transportación de electores el día de las elecciones. Estos últimos, con carácter de crédito básico un millón doscientos mil dólares ($1,200,000) serán prorrateados a base del por ciento de votos obtenidos por los candidatos a Gobernador en las elecciones de ese año. 16 L.P.R.A. sec. 3119(a).

didatos independientes. *Ambas cámaras están dominadas por legisladores afiliados a partidos políticos. Es contrario a sus intereses partidistas asignar fondos a la competencia.*

No podemos avalar un curso decisorio que sólo fomenta *"el predominio de los partidos sobre los ciudadanos, lo que no es democracia sino partidocracia, que es una desviación óntica y pervertida de aquélla,* y lo que es más grave una desnaturalización de la vida democrática, al desconfiar de los ciudadanos". (Énfasis en el original.) *Grillasca Domenech v. C.E.E.,* 121 D.P.R. 186, 190 (1988). Véase *Díaz Delgado v. P.P.D.,* 121 D.P.R. 165, 178 (1988), voto disidente.

Una campaña electoral cuesta a todo candidato, independiente o afiliado a un partido político. Hacer viable una distribución más equitativa del Fondo Electoral es Democracia; no hacerlo, es *Partidocracia.*

Expediríamos el auto y emitiríamos la sentencia conforme estos pronunciamientos.