PARTIDO NUEVO PROGRESISTA, recurrente, v. TRIBUNAL ELEC-
TORAL DE PUERTO RICO, recurrido.

*Número:* O-75-293     *Resuelto:* 1ro. de agosto de 1975

2

*Eugenio S. Belaval Martínez,* abogado del recurrente; *Ramírez & Rivera,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Como foro exclusivo para adjudicar de manera definitiva y final cuestiones jurídicas sobre asuntos electorales, conforme nuestra estructura constitucional vigente sobre el Poder Judicial, y el diseño legislativo reflejado en el Código Electoral de Puerto Rico (Ley Núm. 1 del 13 de febrero de 1974), nos corresponde revisar, a solicitud del Partido Nuevo Progresista, una resolución del Tribunal Electoral negándose a suministrar al referido partido político determinada infor-

mación relacionada con el proceso de recusación de electores. A tales efectos, el 3 de julio de 1975 emitimos la siguiente Resolución:

"Tengan las partes hasta el 25 de julio actual para comparecer a mostrar causa por la que no deba revocarse la orden recurrida dictada el 30 de mayo último por el Tribunal Electoral, y en su lugar ordenar que por dicho Tribunal se provea al recurrente Partido Nuevo Progresista la lista de reclusos extinguiendo sentencia por delitos graves, la de obreros migrantes trabajando bajo contrato concertado por el Departamento del Trabajo, y la lista del personal del Departamento del Trabajo que habrá de actuar como visitadores en los campamentos de trabajadores migrantes con muestra o facsímil debidamente certificada de la firma auténtica de dichos visitadores."

A la fecha de la transcrita Resolución, no surgía del dictamen del Tribunal Electoral, fundamento de hecho o de derecho que nos orientara en dicha etapa respecto a la validez y razonabilidad de su negativa. Dicho organismo administrativo público, al ejercitar las funciones de naturaleza cuasi-judicial que le faculta la ley, deberá hacer una brevísima expresión de los fundamentos de su decisión, la que en casos apropiados puede extenderse a determinaciones de hecho y conclusiones de derecho.(1) Esta norma no ha de ser absoluta e inflexible pues estamos conscientes del gran número de dictámenes que rutinariamente dicho tribunal adopta, al igual que la multiplicidad de asuntos—meritorios e inmeritorios—que hacia éste convergen. A los fines de la norma expuesta bastará que tal gestión se cumpla al momento de emitirse inicialmente la resolución o posteriormente mediante resolución complementaria en aquellos casos en que al tribunal recurrido le sea notificado un recurso de revisión.

Sin embargo, de rigor es enfatizar que la ausencia de determinaciones de hecho y de derecho, no sólo dificulta la

---

(1) Debe recordarse que el Art. 2-012 (16 L.P.R.A. sec. 2032) del Código preceptúa que a los fines de una revisión judicial, "[l]as determinaciones de hecho del Tribunal Electoral serán finales."

labor revisadora ante el foro judicial, sino que obstaculiza el mejor entendimiento por los partidos políticos y demás electores de las razones que sostienen determinado proceder, afectando con ello la efectividad de la misión encomendádale como organismo rector a cargo de la dirección y supervisión del sistema electoral puertorriqueño.

En su comparecencia ante nos, el tribunal recurrido acompaña varios documentos oficiales, (²) y señala que "[c]omo cuestión de hecho, en el curso normal del descargo de sus responsabilidades en relación con el proceso inscripcionario, y en cumplimiento con sus resoluciones . . . , ha gestionado y ha conseguido parte de la información solicitada por el peticionario recurrente, y dicha información está a la disposición de todos los procuradores electorales de los partidos políticos legalmente inscritos para su examen en el Tribunal, según lo establecen los Artículos 2-017(h) y 2-019 del Código Electoral."

No obstante lo anterior, en contra del recurso aduce los argumentos que exponemos a continuación en forma sintetizada: que no viene obligado a proveer las listas solicitadas por no poseer dicha información; que sobre el particular, en torno al proceso inscripcionario, su obligación se circunscribe a proveer oportunamente a los partidos políticos las listas de electores provisionales y finales; que el Código Electoral no compele a ningún funcionario ni al Estado a suplir al Tribunal Electoral los nombres de personas convictas por delito grave, excepto el deber de las salas del Tribunal Superior de Puerto Rico de remitirle semanalmente una relación de tales personas convictas a partir del último día de celebradas las

---

(²) Consistentes de la *Ley y Reglamento para la Inscripción General de 1975; Resolución Núm. 75-32* de fecha 14 de mayo de 1975 sobre Creación de Distritos Adicionales de Inscripción; *Resolución Núm. 75-33* de 15 de mayo de 1975 sobre Instrucciones Especiales para la Inscripción de Ausentes; y *Certificación* suscrita por el sub-secretario de dicho tribunal acreditativa de que en sus archivos no obraban las listas a la fecha en que fueron solicitadas.

inscripciones generales; y finalmente, que el Código Electoral y la reglamentación vigente aprobada, garantizan adecuadamente la pureza del trámite de inscripción y del Registro de Electores.

Coincidimos con el tribunal recurrido en que el Código Electoral no le impone la obligación expresa de entregar o poner a disposición de los partidos políticos la información solicitada por el recurrente, y que la regla general prevaleciente es que la obtención de datos relacionados con posibles trámites de recusación es responsabilidad exclusiva del partido o elector interesado. Para tal gestión éstos deben acudir a otras fuentes de información.

Sin embargo, no podemos pasar por alto circunstancias extraordinarias presentes en todo proceso de inscripción y las amplias facultades que el Poder Legislativo confirió y delegó en el Tribunal Electoral, fundado en la fluidez y las variadas situaciones imposibles de ser contempladas y enumeradas taxativamente en el Código. Es por ello, que tanto en el descargo de sus funciones propiamente administrativas como en las de carácter cuasi-judicial, dicho cuerpo debe no sólo considerar la letra de la ley sino el espíritu que la inspiró.

El trámite de inscribir personas recluidas en instituciones penales y obreros migrantes ausentes, es uno de excepción cuya autorización responde al laudable propósito de no privar del derecho al voto a aquellos que las circunstancias de infortunio le impiden desempeñarse libremente en nuestra sociedad o les lleva a estar laborando fuera del país.

Por ser de ordinario circunstancias personales pasajeras, la información referente a las mismas, usualmente no es de conocimiento común ni trasciende el ámbito familiar o el de un reducido círculo de amigos o conocidos. (3) En el es-

---

(3) Aun cuando los requisitos relacionados con la edad de un elector y la ciudadanía presentan características también similares, a los fines de una recusación, el Código respectivamente abre gratuitamente las puertas del Registro Demográfico y establece la prueba sobre ciudadanía, facilitando así la comprobación de tales hechos.

**6**

quema de nuestra estructura gubernamental, las fuentes oficiales de la información antes indicada lo constituyen la Administración de Corrección, los Tribunales de Justicia y el Departamento del Trabajo. Son éstos los custodios de las personas o de los documentos que acreditan tales circunstancias y sus particulares.

Tomando como trasfondo el marco conceptual expuesto, pasemos a considerar los méritos del recurso. En lo concerniente a las personas recluidas en las instituciones penales, el Código Electoral reconoce el ejercicio de este derecho, de rango constitucional, [4] a aquellas personas que habiendo sido convictas de cualquier delito extinguieron la pena judicial impuesta. Ello surge implícitamente de las siguientes disposiciones:

"Será elector de Puerto Rico todo ciudadano de los Estados Unidos que cumpla dieciocho (18) años de edad o más a la fecha de una elección general, que esté domiciliado en Puerto Rico, que *en el día de una elección esté debidamente inscrito . . . y que no esté legalmente incapacitado para votar. . . .*" Artículo 4-002 (16 L.P.R.A. sec. 2132).

. . . . . . . .

"Aunque fueren *electores inscritos, no tendrán derecho a votar* los declarados incapacitados judicialmente y *los que se encuentren recluidos en instituciones penales por delito grave o delito electoral.*" Artículo 4-003 (16 L.P.R.A. sec. 2133)—énfasis suplido.

■ El ejercicio en su día de este derecho implica el de inscripción, aun para aquellos que al momento de efectuarse este último trámite se encuentren extinguiendo condena por delito grave o electoral. Cualquier otra interpretación sería desarticulada e ilógica, con abstracción del derecho constitucional al sufragio de aquel que habiendo cumplido la pena, al

---

[4] El Art. II, Sec. 12 de la Constitución del Estado Libre Asociado de Puerto Rico dispone, en lo pertinente: "La suspensión de los derechos civiles *incluyendo el derecho al sufragio* cesará al cumplir la pena impuesta."

reintegrarse a la sociedad, recobra automáticamente sus derechos civiles. Consecuentemente, debe entenderse que la circunstancia señalada en el Art. 5-030 (A) (5) (16 L.P.R.A. sec. 2210 (A) (5) )—disponiendo como causal para eliminar a un elector de las listas provisionales su condición de estar recluido en una institución penal convicto de delito grave o electoral—no contempla ni alcanza a los reclusos cuyas sentencias expiren antes de la fecha de la próxima elección y cumplan los demás requisitos de ley.

Ahora bien: ¿Cómo podrán los partidos políticos y demás electores interesados recusar responsablemente a un convicto, si carecen de información respecto al carácter del delito, términos de la sentencia y por ende, de la fecha en que extinguirá la pena?

La respuesta a esta interrogante consiste en recopilar oficialmente la lista de reclusos confinados interesada por el recurrente. Tal información no resulta extraña ni inaccesible al Tribunal Electoral, que mediante Resolución Núm. 75-32 del 14 de mayo de 1975—al fijar las normas a seguirse por los enumeradores en la inscripción de personas en instituciones penales—dispuso la obligación de gestionar ". . . de los administradores de la institución, listas de personas recluidas . . . ." (⁵) *Acápite 3, inciso b.*

Si nos limitamos al señalamiento del recurrido de que la única lista oficial de confinados a prisión por delito grave, será la resultante de las relaciones semanales que el Tribunal Superior le remita a partir del último día de las inscripciones generales, estaríamos creando y permitiendo una laguna o deficiencia informativa perjudicial al proceso de inscripciones o eleccionario, al desconocerse la naturaleza

---

(⁵) De rigor es notar que la gestión impuesta a los enumeradores no exige la obtención de información relativa a la naturaleza del delito por el cual están confinadas tales personas ni ninguna otra información. Creemos que la clasificación de determinado delito en grave o menos grave no resulta, en general, de fácil comprensión para el ciudadano promedio.

del delito y la fecha en que se extinguirá una sentencia impuesta *con anterioridad* a la fecha en que dichos tribunales deberán remitir la información oficial.

Confeccionándose las listas de convictos por delitos graves, podrán los partidos políticos y electores encaminar sus investigaciones relativas a las cualificaciones del recluso sobre una base oficial y firme, y no en orden a unas especulaciones con las consecuencias erráticas que ello conlleva.

Igualmente tiene razón el recurrente respecto al planteamiento sobre la inscripción de trabajadores migrantes según el Art. 5-021 (16 L.P.R.A. sec. 2201) del Código. Veamos.

■ El tribunal recurrido, bajo las facultades que le confiere la ley, adoptó como método para viabilizar la inscripción de los obreros migrantes, que tal gestión sea realizada por personal del Departamento del Trabajo, en calidad de "visitadores" lo que implica, que a los fines del Código Electoral, dicho personal es considerado como "funcionario autorizado para tomar juramentos". Apéndice III.

El recurrente no cuestiona la validez de tal método, pero entiende que la pureza del procedimiento y el derecho a la recusación exigen se conozcan los nombres de los obreros migrantes y el de los funcionarios visitadores con muestra o facsímil debidamente certificada de las firmas de éstos. En su oposición el recurrido argumenta lo innecesario de tal información y la ausencia de disposición legal que le compela a proveerla, aduciendo además, que ". . . la petición es sumamente amplia y onerosa, si se considera el gran número de obreros que incluiría la lista, comparado con el número que de hecho se acoge a los procedimientos de inscripción de ausentes." (6)

---

(6) No habiendo inscripción previa bajo el nuevo Código Electoral, no podemos compartir, por falta de experiencia y estadísticas, la conclusión sobre el número reducido de obreros que finalmente serán inscritos. Al contrario, los dictámenes administrativos del Tribunal Electoral

Los fundamentos respecto al primer planteamiento también son aplicables al que nos ocupa, fortalecido por la circunstancia particular de que ni los obreros ni los funcionarios autorizados estarán disponibles en Puerto Rico a los fines de investigarse y corroborarse la validez de la inscripción. Si las peticiones de inscripción de obreros migrantes quedan sujetas ". . . a todos los trámites ulteriores que fija [el] Código, incluyendo el procedimiento de recusación", ciertamente la información requerida representa la mejor forma para ejercitar meritoriamente tal derecho; constituye un perfeccionamiento del método adoptado por el tribunal recurrido y una salvaguarda adicional.

En resumen, concluimos que la información requerida es consustancial al derecho de recusación que el recurrente posee, y para evitar que la falta de tal data dé margen a que éste, otro partido o elector recuse automática y viciosamente las peticiones de inscripción de cualquier convicto u obrero migrante, debe el tribunal recurrido acceder a lo solicitado.

No ha de entenderse que estamos relevando a los partidos políticos de la parte que les corresponde en la gestión de medios y recursos para implementar la labor de recusación autorizada por ley. Estimamos, sin embargo, que conviene a la pureza y a la eficacia integral del sistema electoral la canalización a través del tribunal de todo trámite o procedimiento relevante a su alta encomienda y hasta donde permita su capacidad física de trabajo. Es en el justo equilibrio entre estas dos premisas y considerando las circunstancias de excepción de este caso—toda vez que las personas afectadas o están fuera de Puerto Rico o recluidas y privadas de su libertad— que consideramos propia la intervención de la autoridad del tribunal recurrido para obtener y poner a disposición de los partidos dicha información a los fines de cualquier recusación.

---

sobre el particular evidencian un firme propósito de diseminar los trámites aplicables para "que se obtenga la inscripción del mayor número posible . . . ."

■ Si bien como regla general en nuestra función de revisar las determinaciones del tribunal recurrido, aplicaremos el principio jurídico de deferencia judicial y autolimitación—basado en los fundamentos válidos que existen en el área del derecho administrativo por todos conocidos—y aun cuando reconocemos la amplia latitud discrecional que dicho organismo posee en virtud del Código Electoral en un campo tan sensitivo como el de la política partidista, todo dictamen del mismo prevalecerá o caerá en orden a la correspondencia que exista entre los hechos particulares de cada recurso y la razonabilidad, corrección y justicia de la norma de derecho aplicada, teniendo presente como fin inmediato la máxima cardinal de nuestro sistema democrático que aspira a que el procedimiento electoral, tanto en la fase adjetival como sustantiva, constituya ". . . la expresión libre y fiel de la voluntad de los ciudadanos que es la voluntad de Puerto Rico." Código Electoral, Art. 1-001, *in fine* (16 L.P.R.A. sec. 2001).

Por los fundamentos expuestos, *se dictará Sentencia expidiendo el auto solicitado, y así expedido, ordenando al Tribunal Electoral de Puerto Rico, que a la mayor brevedad obtenga listas oficiales de los reclusos extinguiendo sentencia por delitos graves, de los obreros migrantes trabajando bajo contrato concertado por el Departamento del Trabajo y del personal del Departamento del Trabajo que habrá de actuar como visitadores en los campamentos de trabajadores migrantes con muestra o facsímil debidamente certificada de la firma auténtica de dichos visitadores. Tales listas estarán disponibles para examen por los procuradores electorales de los partidos políticos, conforme a ley.*

El Juez Asociado Señor Rigau no intervino.