# 2000 DTA 149

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL I - SAN JUAN**
**PANEL III**

JULIO A. ROSADO VAZQUEZ
Recurrente

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO, ADMINISTRACION DE CORRECCION, SERVICIOS CORRECCIONALES DE PUERTO RICO
Recurridos

Núm. KLRA-2000-00153

San Juan, Puerto Rico, a 16 de junio de 2000

Panel integrado por su Presidente, Juez Arbona Lago
y los Jueces Cordero y Urgell Cuebas

*Per Curiam*

## TEXTO COMPLETO DE LA SENTENCIA

El recurrente, Sr. Julio A. Rosado Vázquez, quien está confinado en la Institución Regional de Bayamón cumpliendo unas penas impuestas por delitos cometidos, presentó una solicitud de revisión judicial de la decisión de la Administración de Corrección de no proveerle una resolución por escrito que contenga las razones por las cuales no se le concedió su solicitud de un cambio de custodia mediana a mínima, conforme las normas establecidas por la Agencia. En el escrito de revisión, éste plantea, además, la comisión de una serie de errores, algunos de ellos dirigidos a cuestionar los méritos de la decisión.

El principio que rige en nuestra jurisdicción, plasmado en el Art. VI, Sección 19 de nuestra Constitución es, que la administración de las instituciones penales y el tratamiento y rehabilitación de los confinados propendan, *"dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social."*

En cumplimiento de esta meta, la Ley Orgánica de la Administración de Corrección autoriza a dicho organismo a formular la reglamentación interna necesaria para los programas de diagnóstico, clasificación, tratamiento y rehabilitación de la clientela del sistema correccional. 4 L.P.R.A. sec. 1112(c) (Supl. 1999).

A tenor con dicha autorización, la Administración adoptó el Manual de Reglas para Crear y Definir Funciones del Comité de Clasificaciones y Tratamiento en las Instituciones Penales de 8 de marzo de 1979, el cual es el cuerpo de normas aplicable a la presente controversia. ■

El Manual establece un Comité de Clasificación y Tratamiento de la Administración como el organismo encargado de evaluar y adjudicar el nivel o clasificación de custodia a la que corresponde asignar a los confinados, así como diseñar un plan de tratamiento y rehabilitación para éstos.

El Comité está compuesto por el Jefe de la Institución o su Auxiliar, el Oficial de Servicios Sociopenales a cargo del caso o el Supervisor de dicha área y un representante de la custodia. Se dispone que sus acuerdos serán tomados por consenso mayoritario y que los mismos *"deberán estar fundamentados por hechos e información sometida a su consideración, donde se evidencie la necesidad de la acción que se aprueba o recomienda."* Manual, Regla 5.

El Manual define la *"custodia mediana"* de la manera siguiente:

*"Es aquel grado de supervisión donde se requiere un menor uso de controles externos para con el confinado por haberse determinado, luego de un estudio ponderado del caso, que éste cuenta con aquellos controles internos o los ha internalizado durante el confinamiento, que le permiten convivir con otros confinados; participar de los programas de tratamiento y de las actividades dentro del perímetro de seguridad institucional, sin necesidad de medidas de vigilancia extremas. Se considera que a pesar del confinado tener estos controles internos, no está preparado aún para disfrutar de actividades en el exterior del penal."*

La *"custodia mínima"* se define como:

*"Es aquella donde, luego de un estudio detenido del caso, se determina que el confinado puede funcionar con un mínimo de controles externos o restricciones físicas y se entiende que su circulación dentro de la institución o fuera de ella no representa peligro para la población penal, los empleados o para la comunidad.*

*...*

*Se aplica cuando el confinado denota tener los suficientes controles internos como para disfrutar de permisos para salir fuera de la institución penal sin custodia, para ubicarse en una institución de tipo abierta, ser ubicado en centros de tratamiento públicos o privados de la comunidad, así como para traslado a un Hogar de Adaptación Social y otros privilegios institucionales."*

El Manual añade:

*"2. Se considerará la conveniencia de asignarle custodia mínima a un confinado cuando el historial social y delictivo, así como su comportamiento, reflejen mayormente los siguientes indicadores, y el análisis de los mismos no se inclina hacia la asignación de una custodia mediana:*

*a) Que el confinado no tenga casos pendientes por resolver en los Tribunales.*

*b) Que del historial social y de la evaluación ponderada del caso, se desprenda que el confinado no representa una amenaza para la población penal, empleados del Sistema o para la comunidad.*

*c) Que el historial delictivo y circunstancias en que cometió el delito no revelen peligrosidad o habitualidad.*

*d) Que su comportamiento observable evidencie que ha ganado sentido de responsabilidad, que ha habido crecimiento personal, que ha demostrado interés por los programas de tratamiento y ha sacado provecho de éstos y se ha trazado unas metas reales y claramente definidas para reintegrarse a la comunidad como ciudadano útil.*

*e) Que su historial social y delictivo no revele un riesgo de fuga, más allá del que representa todo confinado.*

*f) Que el confinado acepte y observe las normas institucionales.*

*g) Que su situación emocional sea razonablemente estable, de forma tal que no represente riesgo para él, ni para sus compañeros y la sociedad en general.*

*h) Que se perfile como buen candidato para recibir tratamiento en programas de comunidad y participar en actividades en la misma.*

*i) Que por lo menos en los ocho (8) meses previos a su consideración para cambio de custodia de mediana a mínima, el confinado no haya sido declarado incurso en una vista administrativa por la comisión de una ofensa menos grave o falta mayor, conforme se establecen éstas en el Reglamento para los Procedimientos Disciplinarios. En los casos de Ofensa Grave, deberá haber transcurrido por lo menos un (1) año.*

*j) Aquellos confinados que estando en custodia mediana, muestran cambios favorables en su comportamiento observable y se evidencia marcado interés en continuar beneficiándose de los programas y servicios a su disposición."*

El Reglamento contempla que la determinación sobre la custodia de un confinado sea revisada periódicamente, cada seis (6) meses o menos, dependiendo del tipo de caso.

En la situación de autos, el recurrente alega que la Administración actuó de forma arbitraria al denegar su solicitud de reclasificación.

Según surge del expediente, al recurrente no se le brindó explicación para la denegatoria a que llegó el Comité en la vista del 1ro de noviembre de 1999. El peticionario solicitó por escrito los acuerdos del Comité y luego utilizó el procedimiento de Quejas y Agravios para solicitar lo mismo. A pesar de ello, la Administración no consignó sus determinaciones por escrito, de manera que pudieran ser objeto de revisión por este Tribunal.

El Tribunal Supremo de Puerto Rico ha resuelto que, por imperativo de la garantía constitucional al debido procedimiento de ley, los organismos administrativos, de ordinario, vienen obligados a efectuar determinaciones de hecho y a expresar las razones o fundamentos para una decisión administrativa. Véase, *Misión Ind. P.R. v. J.P.,* **98 J.T.S. 79,** a la pág. 1,168; *Rivera Santiago v. Secretario de Hacienda,* 119 D.P.R. 265, 274-275 (1987); *Vega Cruz v. Comisión Industrial,* 110 D.P.R. 349, 352-353 (1980); *P.N.P. v. Tribunal Electoral,* 104 D.P.R. 1, 3-4 (1975); *López v. Junta de Planificación,* 80 D.P.R. 646, 667 (1958); *Godreau & Co. v. Com. Servicio Público, 71* D.P.R. 649, 655-656 (1950).

Esta obligación ha sido codificada, para procedimientos de naturaleza adjudicativa, en la sección 3.14 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2164. El Tribunal Supremo de Puerto Rico, sin embargo, ha aclarado que la misma subsiste, en la generalidad de los casos, aun cuando el estatuto guarde silencio sobre este requisito o se trate de procedimientos administrativos informales. *Rivera Santiago v. Secretario de Hacienda,* 119 D.P.R. ___, a la pág. 275.

Ni la Constitución de los Estados Unidos ni la de Puerto Rico requieren al Estado la adopción de un esquema específico de clasificación que garantice o de lugar a una expectativa por parte del recurrente o de cualquier otro confinado, con respecto a las circunstancias en las que deba llevarse a cabo su confinamiento. Véanse, *Sandin v. Conner,* 515 U.S. 472, 482 (1995); *Hewitt v. Helms,* 459 U.S. 460, 471 (1983); *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 7-8 (1979); *Meachum v. Fano,* 427 U.S. 215, 228-229 (1976).

Ahora bien, habiendo adoptado la Administración un reglamento que establece y define varias categorías de custodia, a base de los criterios antes citados, dicha actuación tiene la consecuencia de limitar el ejercicio de discreción por parte de la agencia, la cual viene obligada a justificar sus determinaciones en esta área, con arreglo a las normas por ella adoptadas. *Ky. Dept. of Corrections v. Thompson,* 490 U.S. 454, 462 (1989); *Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Vitek v. Jones,* 445 U.S. 480, 488-491 (1980); *Wolff v. McDonnell,* 418 U.S. 539, 564-565 (1974).

El principio aplicable en nuestra jurisdicción es que una agencia viene obligada a observar estrictamente sus propios reglamentos, no pudiendo quedar a su arbitrio si reconoce o no los derechos que de ellos puedan dimanar. *Com. Vec. Pro-Mej., Inc. v. J.P.,* **99 J.T.S. 32,** a la pág. 734; *Torres Arzola v. Policía de Puerto Rico,* 117 D.P.R. 204, 212 (1986); *García v. Administración del Derecho al Trabajo,* 108 D.P.R. 53, 56 (1978).

El Tribunal Supremo de Puerto Rico ha observado que las decisiones de una agencia administrativa no pueden ser pro forma, sino que las mismas deben reflejar el razonamiento del foro administrativo y los fundamentos considerados por éste para arribar a su decisión. *Misión Ind. P.R. v. J.P., supra,* a la pág. 1,168; *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 D.P.R. ___(1997), **97 J.T.S. 142.**

En la situación de autos, el recurrente cuestiona la determinación tomada por la agencia, aduciendo que la misma resultaba irrazonable, a la luz de su récord favorable como confinado. No estamos, sin embargo, en posición de pasar juicio sobre los méritos de esta contención, ante la ausencia de una resolución de la agencia, exponiendo los fundamentos para su actuación. Aunque la decisión de la recurrida se presume correcta, véanse, *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.,* 133 D.P.R. ___(1993), **93 J.T.S. 88,** a la pág. 10,785; *Henríquez v. Consejo de Educación Superior,* 120 D.P.R. 194, 210 (1987), es difícil honrar dicha presunción cuando su determinación se halla desprovista de fundamento alguno. En estas circunstancias, procede la devolución del

expediente a la Administración de Corrección para que proceda a la formulación de las determinaciones y conclusiones correspondientes. *Misión Ind. P.R. v. J.P., supra,* a la pág. 1,168; *Rivera Santiago v. Secretario de Hacienda,* 119 D.P.R. 265 (1987).

Lo anterior no implica que resulten aplicables a este tipo de determinaciones todos los requisitos procesales establecidos por la Ley de Procedimiento Administrativo Uniforme para procedimientos adjudicativos. 3 L.P.R.A. secs. 2151 y ss. El procedimiento de reclasificación es de naturaleza informal, no siendo necesario para su celebración la observación rigurosa de ciertos de los requisitos exigidos por la Ley de Procedimiento Administrativo Uniforme, tales como presentación de *"querellas",* designación de oficial examinadores, celebración de conferencia con antelación a la vista, descubrimiento de prueba, y otros que operarían en procedimientos adjudicativos de naturaleza más formal.

No obstante, los confinados afectados por este tipo de determinación tienen derecho a las garantías mínimas reconocidas bajo el debido proceso de ley, que incluyen una notificación oportuna del procedimiento y de los fundamentos de la actuación administrativa, el derecho a ser oído y a una determinación imparcial basada en el récord administrativo. *Magriz v. Empresas Nativas,* 143 D.P.R. ___(1997), **97 J.T.S. 55,** a la pág. 944*; López y otros v. Asoc. de Taxis de Cayey,* 142 D.P.R. ___(1996), **96 J.T.S. 161,** a la pág. 401; cf., 3 L.P.R.A. sec. 2151.

Por ser informal, el procedimiento de reclasificación de custodia no se guía por la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. secs. 2101 y ss. Dicha Ley, según se conoce, establece un cuerpo de reglas aplicables a todos los procedimientos administrativos conducidos ante las agencias que no hayan sido expresamente exceptuadas de la misma. Su propósito es lograr la uniformidad en la administración pública. *Const. I. Meléndez, S.E. v. A.C.,* **98 J.T.S. 134,** a la pág. 155.

El Tribunal Supremo de Puerto Rico ha aclarado que, luego de su adopción, la Ley de Procedimiento Administrativo Uniforme prevalece sobre todo reglamento o disposición legal adoptado por una agencia y que resulte inconsistente con sus disposiciones. Véanse, e.g., *Carabarín v. A.R.P.E.,* 132 D.P.R. 938, 952 (1993); *Pagán Ramos v. F.S.E.,* 129 D.P.R. 888, 902 (1992*); Hernández v. Golden Tower Development Corp.,* 125 D.P.R. 744, 748 (1990).

La Administración de Corrección no aparece exenta de la Ley, por lo que debe entenderse que la misma está gobernada por las disposiciones de la misma. 3 L.P.R.A. sec. 2103; compárese, *Ortiz v. Alcaide Penitenciaría Estatal,* 131 D.P.R. 849, 863 (1992) (Ley de Procedimiento Administrativo Uniforme se aplica a procedimientos ante la Junta de Libertad Bajo Palabra). Ello incluye las disposiciones sobre revisión judicial de sus actuaciones. 3 L.P.R.A. sec. 2171.

El propósito de la revisión judicial, según ha observado el Tribunal Supremo de Puerto Rico, es delimitar la discreción de los organismos administrativos y asegurar que éstos actúen de conformidad con la ley. *Misión Ind. P.R. v. J.P., supra,* a la pág. 1,159. Para viabilizar dicha revisión, sin embargo, la Administración de Corrección viene obligada a ofrecer a los confinados las garantías mínimas mencionadas, independientemente de que se trate de un proceso informal.

En *Rivera Santiago v. Secretario de Hacienda,* 119 D.P.R. 265, por ejemplo, se trataba de la revisión de una determinación del Departamento de Hacienda denegando una exención reclamada por un contribuyente - procedimiento a todas luces *"informal"*-, pese a lo cual el Tribunal Supremo de Puerto Rico resolvió que la parte afectada tenía derecho a ser notificado de los fundamentos de la actuación de la agencia. *Id.,* a las págs. 274-278.

En la situación de autos, se trata de una determinación sobre el nivel de custodia al que se asigna a un confinado. Aunque el recurrente no tiene un interés libertario constitucional sobre su clasificación, se trata de un asunto que tiene un indudable impacto e interés para una persona que se encuentra confinada, el cual se encuentra reglamentado por el mencionado Manual de Reglas para Crear y Definir Funciones del Comité de Clasificaciones y Tratamiento en las Instituciones Penales de 8 de marzo de 1979.

Los confinados, por el hecho de estar en prisión, no quedan privados de toda otra garantía procesal constitucional. *Pueblo v. Falú Martínez*, 116 D.P.R. 828, 835 (1986). Aunque sin la rigidez que revisten otras áreas del derecho, opinamos que el debido procedimiento exige, en situaciones como la de autos, que la Administración les brinde un proceso justo y equitativo que garantice y respete su dignidad. *Magriz v. Empresas Nativas, supra.*, a la pág. 944. Desde luego, las garantías requeridas no tienen, en el contexto de una determinación sobre el nivel de custodia, el mismo alcance ni están revestidas de la misma formalidad que un procedimiento adjudicativo. Basta que se ponga al confinado en condiciones de ejercitar su derecho a la revisión judicial.

En cuanto a la posibilidad de que lo antes expuesto aumente el costo de las vistas para revisar el nivel de custodia, no entendemos que dichas consideraciones deban ser determinantes. Los requisitos procesales que hemos discutido proceden como cuestión de ley, por mandato de la cláusula del debido proceso. Son los mismos requisitos que rodean controversias patrimoniales, a menudo de escasa cuantía, que se ventilan ante el Departamento de Asuntos del Consumidor y otras agencias que también tienen la responsabilidad de atender un alto número de casos. No vemos razón para brindar un trámite distinto a las controversias atendidas por la Administración de Corrección, sólo porque la clientela de ésta consista de personas confinadas. No podemos alterar la ley o contrariar la justicia en nombre de la salud financiera de una agencia. *Rivera González v. F.S.E.*, 112 D.P.R. 665, 670 (1982).

Ahora bien, también podría argumentarse que la determinación recurrida no es revisable, por no tratarse de una determinación final.

La sección 4.2 de la Ley de Procedimiento Administrativo Uniforme autoriza la revisión de una orden o resolución final de una agencia, exigiendo que se hubieran agotado todos los remedios provistos por la agencia o el organismo apelativo correspondiente. 3 L.P.R.A. sec. 2172; *Igartúa de la Rosa v. A.D.T.*, **98 J.T.S. 157**, a la pág. 397.

El Tribunal Supremo de Puerto Rico ha aclarado que el término orden o resolución final se refiere a las decisiones que ponen fin al caso ante la agencia y que tienen efectos sustanciales sobre las partes. *J. Exam. Tec. Méd. v. Elías et al*, 144 D.P.R. ___ (1997), **97 J.T.S. 141**, a la pág. 320; *Pueblo ex rel. R.S.R.*, 121 D.P.R. 293, 299 (1988); Demetrio Fernández Quiñones, *Derecho Administrativo y la Ley de Procedimiento Administrativo Uniforme*, Ed. Forum, 1993, a la pág. 479. Estas tienen las mismas características de una sentencia en el procedimiento judicial porque resuelven finalmente la cuestión litigiosa, pudiendo ser revisadas ante el foro apelativo. *Pueblo ex rel. R.S.R., supra*, a la pág. 299.

Claramente, desde el punto de vista del confinado, la adjudicación negativa de su solicitud de reclasificación constituye una adjudicación final de dicho incidente. El hecho de que dicha determinación pudiese ser reevaluada más adelante, no derrota lo anterior. A nuestro juicio, el carácter continuo de una actividad o relación jurídica no significa que no pueda atribuirse un carácter de finalidad a las determinaciones individuales que se producen en el curso de la misma y que adjudican incidentes separados dentro de una cadena de eventos, como lo son las determinaciones de solicitud de custodia para un confinado.

Así, por ejemplo, dentro del contrato de empleo de un funcionario público, el cual puede extenderse por muchos años, suelen suscitarse distintos incidentes, tales como traslados, reclasificaciones, amonestaciones, negativas a aumentar el sueldo, pago de horas extras, etc., a las cuales se atribuye un carácter de finalidad, siendo revisables ante J.A.S.A.P., J.A.S.E.D. y otros organismos. Véanse, a modo de ejemplo, *Ramírez v. Depto. de Salud*, **99 J.T.S. 47**; *Hernández v. J. Apel. del Sist. Educ. Púb.*, **99 J.T.S. 34**; *Guzmán v. Depto. de Hacienda*, **98 J.T.S. 145**.

Similarmente, dentro del contexto judicial, el Tribunal Supremo de Puerto Rico ha conferido carácter de finalidad a determinaciones que no necesariamente extinguen los procedimientos, pero que adjudican de forma

definitiva algún asunto. Véanse, por ejemplo, *Figueroa v. Del Rosario,* **98 J.T.S. 151**; *Progressive Finance v. LSM Gen. Const.,* **98 J.T.S. 8.**

Concluimos que, en la situación de autos, la decisión de la Administración de denegar al recurrente la reclasificación solicitada por éste es revisable por este Tribunal, bajo la sección 4.2 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. 2172. Toda vez que la omisión de la agencia de consignar los fundamentos de su actuación nos impide evaluar los méritos del recurso, debemos devolver el caso ante la agencia para que corrija esta omisión.

Finalmente, tomamos nota que a partir del 2 de julio de 1997 se adoptó un Manual de Clasificación a la luz del caso de *Morales Feliciano, supra,* cuya vigencia comenzó para ciertas instituciones penales, pero que desde el 23 de enero de 2000 se encuentra vigente para todas las regiones penales. Este Manual, aunque no es de aplicación a la situación de hechos del caso, pues éste no estaba vigente para la institución donde el recurrente estaba confinado, lo cierto es que en el mismo se contempla una notificación escrita a éstos de la determinación respecto a la clasificación de custodia. Véase, Sección 7, párrafos 4 y 5 del *"Classification Manual"*. Es decir, que se reconoce que los confinados deben ser notificados por escrito de la determinación respecto a su clasificación de custodia y, además, se le provee un mecanismo de revisión. Según hemos expresado anteriormente, es nuestro criterio que la misma es revisable bajo la Sección 4.2 de la Ley de Procedimiento Administrativo Uniforme.

En vista de lo anterior, se expide el auto solicitado y se ordena a la Administración de Corrección para que, dentro del término de treinta (30) días, notifique por escrito su determinación fundamentada sobre el nivel de custodia denegado al peticionario, conste ello de la determinación original de la cual se recurrió o de una subsiguiente evaluación del confinado.

Así lo pronunció y manda el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Sub-secretaria General