*378 TEXTO COMPLETO DE LA SENTENCIA
Two J’s Café & Grill Corp. {“Two J’s Café”), nos insta a que revoquemos la determinación tomada por la Oficinal Municipal de Permisos Urbanísticos del Gobierno Municipal Autónomo de Carolina (“OMPUMAC”), mediante la cual le denegó el permiso que solicitó para la intensificación de un uso en la operación de su negocio de restaurante y barra ubicado en la Ave. Isla Verde en Carolina.
Por las fundamentos que exponemos, revocamos la resolución recurrida y devolvemos el caso a la OMPUMAC para que celebre una vista y actué conforme a lo que aquí exponemos.
Los hechos son los siguientes. Two J’s Café lleva a cabo su actividad comercial en un local ubicado en la Avenida Isla Verde en Carolina localizado, a su vez, en una Zona o Distrito Comercial Turístico Uno (CT-1). Cuenta con un permiso de uso expedido por la OMPUMAC, para operar un restaurante y barra con autorización para vender bebidas alcohólicas detalladas en una primera planta.
El 13 de marzo de 2003 presentó solicitud de intensificación de uso. Según se desprende del memorial explicativo que acompañó con la petición, el nuevo uso propuesto consiste en lo siguiente: 

“Primer piso: Restaurante y bar con venta de bebidas alcohólicas detalladas, música de [d]isk [j]ockey y ocasionalmente música en vivo.

Segundo Piso: Terraza no techada donde se sirve comida preparada en el restaurante del primer piso, venta de bebidas alcohólicas detalladas y un sistema de sonido constituido por una bocina en la cual se proyecta la música que se escucha en el primer piso. El volumen de la bocina es bajo para que no interfiera con la conversación de los clientes y para que no perturbe a los vecinos. ”

Inicialmente, la OMPUMAC le requirió el endoso de la Compañía de Turismo y una copia del contrato de arrendamiento del local que ocupa. En cumplimiento, Two J’s Café sometió tanto el aval de la Compañía de Turismo como copia del contrato de arrendamiento. Casi dos (2) años después, se emitió la resolución recurrida. Denegó el permiso de uso peticionado.
En desacuerdo, Two J’s Café solicitó reconsideración. Reclamó que el uso de música en vivo o en “disc-jockey” constituye uno accesorio al principal que le fue concedido. La OMPUMAC no la consideró dentro del plazo reglamentario. En su consecuencia, insta el recurso que nos ocupa. Imputa la comisión de los siguientes cuatro (4) errores:

“A. Erró la Oficina Municipal de Permisos Urbanísticos del Municipio Autónomo de Carolina al determinar que la Reconsideración fue presentada fuera del término.

B. Erró la Oficina Municipal de Permisos Urbanísticos del Municipio Autónomo de Carolina al denegar el permiso de uso solicitado por TWO J’S CAFE & GRILL mediante una Resolución contraria a derecho, insuficiente y vaga, que no contiene determinaciones de hechos, ni informa las razones para denegar el permiso y cuyas determinaciones de derecho están basadas en disposiciones inaplicables del Reglamento.

C. Erró la Oficina Municipal de Permisos Urbanísticos del Municipio Autónomo de Carolina al denegar el 
*379
permiso de uso, ya que los usos propuestos están permitidos conforme a la reglamentación vigente.

D. Erró la Oficina Municipal de Permisos Urbanísticos del Municipio Autónomo de Carolina al denegar el permiso de uso solicitado por TWO J’S CAFÉ & Grill, al no darle trato igual y aplicarle las leyes y reglamentos deforma distinta a otros negocios aledaños. ”

Atendido el recurso, le ordenamos a la OMPUMAC que expresara su posición. Así lo hizo. En su comparecencia explica las razones por las cuales denegó el permiso. Argumenta que en una Zona CT-1, el Reglamento no permite operar una barra o restaurante con música en vivo o de “disc-jockey”. Añade que dicha actividad no puede catalogarse como una accesoria al uso principal. Sostiene que la pista de baile preparada en el local convertiría el negocio en una discoteca o club nocturno, uso no contemplado en la zona. Con el beneficio de los escritos, pasamos a resolver.
El primer señalamiento de error es inmeritorio. Two J’s Café indica que incidió la OMPUMAC al denegar la solicitud de reconsideración por alegadamente resultar tardía. Según se desprende del expediente, la moción de reconsideración no fue atendida por lo que se entiende rechazada de plano.
Por el segundo, se imputa que la resolución denegando el permiso de uso es contraria a derecho, insuficiente y vaga por no contener determinaciones de hechos. Tiene razón en cuanto a lo último. Ciertamente, la resolución recurrida resulta ser insuficiente. Carece de base alguna en apoyo de la decisión tomada que cubra la controversia principal. Se limita a informar que deniega la intensificación en el uso debido a que la actividad propuesta no está contemplada en el Reglamento para una Zona CT-1. Nos explicamos.
Mediante su Reglamento de Calificación, en adelante “Reglamentó”, se faculta al Municipio Autónomo de Carolina a expedir, entre otros, permisos de construcción o de uso si los mismos están en armonía y conformidad con las disposiciones establecidas. Al actuar en esas funciones con carácter adjudicativo informal, se le exige que exponga una explicación de la base sobre la que descansa su decisión de forma tal que tengamos fundamentos para adjudicar si es arbitraria o caprichosa. Véase, Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 275 (1987), Cfr., Luán Investment Corp. v. Román, 125 D.P.R. 533, 547 (1990), nota “2”. En casos apropiados amerita que formule los hechos en que apoya su dictamen. Véase, e.g., P.N.P. v. Tribunal Electoral, 104 D.P.R. 1, 3(1975).
Dicho requisito es, además, un instrumento efectivo para alcanzar los siguientes objetivos: Primero, proporcionar a los tribunales la oportunidad de revisar adecuadamente la decisión administrativa y facilitar esa tarea. Segundo, fomentar- que la agencia adopte una decisión cuidadosa y razonada dentro de los parámetros de su autoridad y discreción. Tercero, ayudar a la parte afectada a entender porqué el organismo administrativo decidió como lo hizo, y así determinar si acude al foro judicial o acata la determinación. Cuarto, promover la uniformidad intraagencial. Quinto, evitar que los tribunales se apropien de funciones que corresponde propiamente, bajo el concepto de especialización y destreza, a las agencias administrativas. Rivera Santiago v. Srio. de Hacienda, supra, págs. 276-279.
. Aun cuando no se exige una explicación basada en determinaciones de hechos a la manera y forma de los procedimientos formales, en la adjudicación de procedimientos informales deben mediar razones suficientes que pongan en conocimiento a las partes y al tribunal de los fundamentos que propiciaron tal decisión. Godreau & Co. v. Com. Servicio Público, 71 D.P.R. 649 (1950).
En el caso que nos ocupa, la resolución emitida por la OMPUMAC dispone que la solicitud fue denegada, ya que el uso propuesto no está contemplado dentro del Reglamento en la zona donde opera Two J’s Café. La misma lee como sigue: 

*380
“La edificación donde se interesa establecer el uso propuesto está localizada en una zona clasificada como CT-1, de acuerdo con el Mapa de Calificación de Carolina. Según el Tópico 6, Sección 41.02 y 41.03 del Reglamento de Calificación del Municipio Autónomo de Carolina (Reglamento de Ordenación Núm. 1), este uso no está permitido en esta zona. ”

Resulta de rigor destacar que según expresa la resolución recurrida, no es correcta la referencia que hace la OMPUMAC a las secciones 41.02 y 41.03 del Reglamento aplicables. Realmente, las citadas lo que contemplan son los usos permitidos en un Distrito Comercial Turismo Dos (CT-2). Más bien, debió leer secciones 40.02 y 40.03 por ser las que se acoplan a un CT-1. Aclarado lo anterior, advertimos, de entrada, que la OMPUMAC pasa por alto indicar cuál de los usos propuestos, entiéndase restaurante, barra con venta de bebidas alcohólicas detalladas, música en vivo o “disc-jockey”, no está permitido en el área.
De un examen de lo que expresa la OMPUMAC en su comparecencia ante este Foro, inferimos que del nuevo uso intensificado propuesto por Two J’s Café, los únicos excluidos son el de “disc-jockey” y música en vivo, ya que, según lo admite, el Reglamento contempla en un distrito CT-1 los de “barra o cafetín” y “restaurante, cafetería o fuente de soda”, para los cuales se otorgó permiso.
La sección 83 del Reglamento, por su parte, regula lo relacionado con los usos accesorios. La misma lee como sigue:

“83.01. Disposiciones Generales. Podrán proveerse usos accesorios a cualquier fin principal permitido en el distrito en que ubique una pertenencia de acuerdo con lo establecido en esta Sección.

1. Todo uso accesorio a permitirse será claramente incidental y corrientemente relacionado con el fin principal al que habrá de servir.

2. Todo uso accesorio deberá contribuir a la comodidad, conveniencia o necesidad de los usuarios delfín principal servido.

3. Todo uso accesorio deberá ser establecido conjuntamente o con posterioridad al establecimiento del fin principal al que habrá de servir, pero nunca antes.

4. La descontinuación del fin principal implicará la descontinuación de los usos accesorios, excepto cuando se trate de l[a]s unidades de vivienda que se permiten en los edificios accesorios en los distritos residenciales. ”

A esos efectos, el centro de gravedad del planteamiento de Two J’s Café radica en que tanto la música en vivo como el “disc-jockey” pueden ser considerados como un uso accesorio, según permitido por el Reglamento. Cabe señalar que ese señalamiento fue planteado a la OMPUMAC en la moción de reconsideración luego de que dicha oficina se pronunciara en contra de la petición para el propuesto nuevo uso. Sin embargo, fue denegado de plano, por lo que no fue considerado.
A pesar de que la alegación principal de Two J’s Café es que tanto el “disc-jockey” como la música en vivo son usos accesorios al principal, al adjudicar la controversia, la OMPUMAC se limitó a resolverla desde la perspectiva de un sólo perfil, i.e., los usos propuestos no están contemplados en esa área, sin examinar el hilo conductor de la figura invocada del uso accesorio. Tal omisión nos priva de evaluar la información y fundamentos necesarios para poder ejercer adecuadamente nuestro oficio de disección y depuración revisora.
Las razones y argumentos que ahora elabora en su alegato constituyen un intento de la OMPUMAC de suplir en esta etapa lo que ignoró al denegar el permiso solicitado, particularmente en cuanto a lo relacionado *381 con el planteamiento del uso accesorio. Es una forma de evadir su obligación que le impone el debido proceso de ley en su modalidad procesal de explicar la base que consideró al decidir. En esa medida, su comparecencia ante este Foro, donde explica y abunda sobre los fundamentos que consideró, representa una soslayada admisión de que incumplió. El alegato sometido, sin embargo, no suple la certeza de que las razones y argumentos esbozados en el mismo son los que la OMPUMAC adoptó o adoptaría.
Es de suprema necesidad que se delimite normativamente si en efecto ampliar el uso originalmente concedido para incluir música en vivo y/o de “disc-jockey” pueden considerase en este caso como accesorios al permitido a Two J’s Café. A esos efectos, sin rehuir su obligación, deberá la OMPUMAC interpretar lo que constituye un uso accesorio y determinar si la música en vivo y la de “disc-jockey” son o no amenidades dentro de los parámetros de la definición establecida mediante reglamento, accesorias a un restaurante y barra con venta de bebidas alcohólicas detalladas, estos últimos usos enmarcados bajo la rúbrica del Distrito CT-1 donde ubica el negocio que Two J’s Café opera.
Como antes dicho, la OMPUMAC en su comparecencia ante este Foro alude a una pista de baile que alegadamente existe en el local de Two J’s Café. Considera ese hecho material en términos de que su uso convierte la actividad en una al estilo de discoteca, club nocturno, o Recreación Comercial prohibidos en la zona.
Los autos no reflejan ese hecho. De estar el mismo o cualesquiera otro en disputa, deberá celebrarse una vista para dilucidarlo, según lo permite el Art. 13.013 de la Ley de Municipios Autónomos, 21 L.P.R.A. see. 4611(c). Con, o sin vista, por ser innecesaria, emitirá una resolución razonada y fundamentada con las determinaciones de hechos que consideramos amerita la controversia principal suscitada, de tal modo que proporcione los criterios utilizados para mover su discreción y a los tribunales la base para revisarlos, a petición de la parte afectada. Ello así nos permite ejercer la función revisora correctamente sin tener que intervenir con las que propiamente le corresponden inicialmente como ente con especialización y destreza.
Habiéndose cometido el segundo error imputado, nos releva de discutir el resto de los levantados por Two J’s Café. La consecuencia obligada nos conduce a revocar la resolución recurrida y remitir el caso a la OMPUMAC para que actúe de forma compatible con lo aquí resuelto.
Lo acuerda el Tribunal y certifica la Secretaria del Tribunal de Apelaciones.
Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones